Tilgbman C. J.
This is a dispute between the plaintiffs, assignees of a particular part of the property of Barker and Annesly, and the defendant the general assignee for the benefit of all the creditors. There is no doubt of the assignment to the plaintiffs having been good in the beginning. The question is, whether they have conducted themselves in such a manner as to lose the benefit of that which was originally good; in other words, whether they have committed a fraud, in point of law, by permitting Barker and Annesly re^a'n the possession of the assigned property, and thus deceiving the general creditors. In order to form an opinion, it will be necessary to state the evidence *243 with some minuteness. [Here the Ohief Justice stated the facts.]
The general principle with regard to the assignment of personal chattels, is, that where the deed contains an absolute immediate assignment, it is necessary that possession should accompany and follow it, otherwise it will be fraudulent under the statute 13 Elizabeth, and indeed at common law. But where the deed or conveyance is conditional, or to take effect at some future time, the retaining of the possession according to the intent of the deed, is not fraudulent. These principles are adopted by the Supreme Court of the United States in the ease of Hamilton v. Russel, 1 Cranch 309, and the United States v. Hooe et al. 3 Cranch 73, and I consider them as having been adopted by this Court subject however to exceptions, as all general rules are. The first and strongest ground of exception is, necessity; such as exist in the present case. The assignment was made in this city, of goods in Cadiz. To deliver possession was impossible. In such ease, all that is required is to deliver such possession as the nature of the thing admits of. The defendant’s counsel concede, that the delivery of the bills of lading and policy of insurance was sufficient in the first instance, but they say that the plaintiffs were bound to follow up their claim with reasonable diligence, and in that I agree with them. It is insisted that attested copies of the assignment should have been sent to Meade. It would have been more regular to do so, but I cannot think that it was essential. The letter of the plaintiffs, if it had reached Meade, would have apprised him of their claim, and no prudent man after receiving such a letter, would have parted with the property without further inquiry. But the circumstance of the plaintiffs holding no further correspondence with Meade, is accounted for, when we recollect that in a very short time, advices were received of the sale of part of the goods, and a sum being lodged in London, at the disposal of Barker and Annesly, more than sufficient to satisfy the plaintiffs. The whole proceeds of the assigned property, amounted to something upwards of 30,000 dollars. The overplus after indemnifying the plaintiffs, was the property of Barker and Annesly. *There was no impropriety, therefore, in the plaintiffs relinquishing all but what was sufficient for their purpose. They seem to have eonsidei’ed the 1500Í. mentioned in Meade’s first letter as the sole object of their intention. As to the rest, they may be said to have relinquished it. Now in what manner ought they to have acted to get hold of this 1500Í. ? It is contended by the defendant, that they should have *244 written to Berttion and Son, giving them notice of the assignment, and ordering them to pay to none but themselves. But this would have been attended with great and unnecessary delay. Why not draw the money at once through the medium of Barker and Annesly? It does not appear, that so far as this 1500Z. was concerned, the plaintiffs intended to leave any kind of possession in Barker and Annesly, after the bill was sold. On the contrary, the notes given by the purchaser were to have been delivered to the plaintiffs, and that they were not delivered was not their fault, for they frequently applied for them. It is in favor of the plaintiffs, that they came forward to assist the defendant without hope of gain, and that in the commencement of the transaction, they trusted not to the general credit of Barker and Annesly, but to the particular fund which was pledged to them. We must not suppose that this affair was kept secret by collusion, for the jury were told, that in such case, their verdict should be for the defendant. Another singular circumstance is, that the assigned property changed its form, so as to elude the grasp of the plaintiffs. It w»as difficult to be laid hold of; very different indeed from the common case of visible, tangible effects, capable in their nature of being reduced to immediate possession. This is a strong circumstance, and distinguishes the case from those which have been adjudged fraud per se, in all of which possession has been retained by the assignor, with the consent of the assignee. It is very true that the general creditors may have suffered from not having received notice of this assignment at their first meeting in February 1808. Had they known of it, they would probably have insisted on an immediate assignment from Barker and Annesly. But this is not to be imputed to the plaintiffs, because there is no evidence of their having been informed of the meeting. Besides, had the creditors inquired closely into the affairs of Barker and Annesly, it would have ^een f°un(l that *the property shipped to Cadiz was subject to some lien, because the evidences of the property were out of their possession.
Upon the whole, although the plaintiffs may not have followed up their right with the greatest possible diligence, yet I cannot say, that they have been guilty of such gross negligence as to forfeit it. They are not brought completely within the range of those principles which stamp a case with legal fraud, although they have approached very near it. My opinion is against a new trial.