## Sturtevant and Keep *against* Ballard.

THIS was an action of trespass. The declaration contained several counts; *quare clausum fregit, de bonis asportatis, &c.*

The cause was tried at the *Courtlandt* circuit, before the *Chief Justice,* in *June,* 1811.

On the 2d *August,* 1810, one *Mecker* obtained a judgment against *Nicholas Holt,* for 310 dollars; and a *fieri facias* for 177 dollars, on the said judgment, was delivered to the defendant, as "use and occupation of the tools," &c. specified in the bill of sale, " for the term of three months from the date." (The 29th *August,* 1810.)

A judgment was obtained by C against A. the 2d *August,* 1810, on which a *fi. fa.* was issued and delivered to the sheriff, on the 28th *November,* 1810, who took the articles, then in the actual possession of A., and sold them to satisfy the execution of C.

It was held, that the sale of the goods to B , unaccompanied with the actual delivery of them, was fraudulent and void, as against C., a judgment creditor

A voluntary sale of chattels, with an agreement, contained in the deed or out of it, that the vendor may keep possession, is, except in special cases, (and for special reasons, to be shown and approved of by the court, fraudulent and void, as against creditors.

Fraud is a question of law, especially when there is no dispute about facts. It is the judgment of law on facts and intents.

NEW-YORK, Oct. 1812.

STURTEVANT
v.
BALLARD.

A. by a regular bill of sale, sold to B. certain articles, being tools of his trade, for the consideration of a sum of money paid by B. to A. " And also in consideration that A. was to have the

NEWYORK, sheriff, on the 28th *November*, 1810, and on the same day, the
Oct. 1812. defendant went to the shop of *Holt*, who was a blacksmith, and
STURTEVANT levied on the articles in question, which were *blacksmith's tools*.
v.
BALLARD. On the evening of the same day, the plaintiffs removed the arti-
cles from *Holt's* shop to their own store. At the time of the
defendant's seizure, *Holt* showed the tools as his property.

The plaintiffs gave in evidence a bill of sale, dated the 29th
*August*, 1810, executed by *Holt*, by which " in consideration of
102 dollars and 25 cents, paid to him by the plaintiffs, and also in
consideration that he, *Holt*, was to have the use and occupation
of certain tools and instruments, therein after mentioned, for and
unto the full end and term of three months, next following," he
sold and delivered to the plaintiffs the articles in question, which
were specified with their prices, in the bill of sale.

The articles were proved to be of the value of 117 dollars and
30 cents.

A witness testified, that he saw the articles sold and delivered
by *Holt* to the plaintiffs; that the consideration was 37 dollars
in cash, and the residue a debt due from *Holt* to the plaintiffs.

It appeared that one of the plaintiffs had said, that he did not
take possession of the articles, because he thought the bill of sale
sufficient; that *Holt* owed more than had been paid; and that
he did not consider the bill of sale out until the 29th *Novem-
ber*.

It was proved that in the evening of the 28th *November*, the de-
fendant forcibly broke open the inner door of the plaintiffs' store,
and took and carried away the goods in question.

A verdict was taken for the plaintiffs, subject to the opinion of
the court on a case containing the facts above stated. The case
was submitted to the court without argument.

KENT, Ch. J. delivered the opinion of the court. This case is
not of much moment, in respect to the amount of property, but it
is very important, as to the principle involved in the decision.

· The facts lie in a narrow compass. *Mecker*, on the 2d of *Au-
gust*, 1810, obtained judgment against *Holt*. On the 29th of *Au-
gust*, *Holt* sold his goods and chattels (being a quantity of black-
smith's tools) to the plaintiffs, partly for cash, and partly to satisfy
a debt due to them. The articles were specified in the bill of
sale, and the bill contained an agreement, that *Holt* was to retain
the use and occupation of the goods, for the term of three months.

Just before the expiration of the term, and while the goods continued in possession of *Holt*, they were seized by the defendant, as sheriff, by virtue of an execution issued on the judgment in favour of *Mecker*.

The question arising upon this case is, whether the sale to the plaintiffs, under the above circumstances, was valid in law, as against the judgment creditor.

As between the parties to it, a sale of chattels unaccompanied by possession, may be valid. It may even be valid as against a creditor, who was knowing and assenting to the sale. It was so ruled in *Steel* v. *Brown and Pary*, (1 *Taunt.* 381.) but this is not such a case. Here was a judgment creditor affected by the sale.

The statute of 13 *Eliz.* and which has been re-enacted with us, (sess. 10. c. 44. s. 2.) makes void all grants and alienations of goods and chattels, made with intent to delay, hinder and defraud creditors. This statute, as it has been frequently observed, by the *English* judges, was declaratory of the common law; and the true principles of law in relation to such sales, are to be found in a series of judicial decisions, both before and since the statute of *Elizabeth*. The great point is, whether the fact of permitting the vendor to retain possession of the goods, did not render this sale fraudulent in law, notwithstanding such permission was inserted in the deed as a condition of the contract. If there had been no such insertion, but the sale had been absolute on the face of it, and possession had not immediately accompanied and followed the sale, it would have been fraudulent, as against creditors; and the fraud, in such case, would have been an inference or conclusion of law, which the court would have been bound to pronounce. This is a well settled principle in the *English* courts. It is to be met with in a variety of cases, and especially in that of *Edwards* v. *Harben;* (2 *Term Rep.* 587.) and it has been recognised and adopted by some of the most respectable tribunals in this country. (*Hamilton* v. *Russell,* 1 *Cranch,* 309. *Davies* v. *Cope,* 4 *Binn.* 258.) But it by no means follows that such a sale, with such an agreement attached to it, and appearing on the face of the deed, is necessarily valid. There must be some sufficient motive, and of which the court is to judge, for the non-delivery of the goods, or the law will still presume the sale to have been made with a view to " delay, hinder or defraud creditors." Delivery of possession is so much of the essence of the sale of chattels, that an agreement

NEWYORK,
Oct. 1812.

STURTEVANT
v.
BALLARD.

to permit the vendor to keep possession, is an extraordinary exception to the usual course of dealing, and requires a satisfactory explanation. This was a voluntary sale, made by the debtor, soon after the judgment against him, and made to a creditor, partly for cash, and partly to satisfy an old debt; and why was the sale made three months before possession was to be delivered, if it was not to defeat the intermediate execution of the judgment creditor? There is no assignable reason appearing for the arrangement, and the time of delivery might have been postponed for three years, as well as for three months. The instances in which a sale of chattels, unaccompanied with delivery, has been held valid, are all founded upon special reasons, which have no application to this case. In *Stone* v. *Grubbam*, (2 *Bulst.* 225.) Lord *Coke* makes a distinction between an absolute and a conditional sale of chattels, and he says, that " if it was an absolute conveyance, and a continuance in possession afterwards, this shall be adjudged in law to be fraudulent; but when the conveyance is conditional, continuance in possession after this shall not, in the judgment of the law, be said to be fraudulent." This case related to a lease for years of land; and in *Edwards* v. *Harben*, Mr. Justice *Buller* considers this as a well settled distinction, applicable generally, to the sale of personal chattels. We are not, however, to understand the meaning of these cases to be, that a conditional sale of chattels, unaccompanied with possession, is, *per se*, a good sale. It is only good in special cases, and all the instances referred to by *Buller*, in illustration of the distinction, are of that special character. A conditional, as well as an absolute sale, may equally be fraudulent, in point of law, as well as fraudulent in fact, unless the intent of the parties in creating the condition, be sound and legal. Neither the statute of 13, nor that of 27 *Eliz.* makes any distinction between conditional and absolute sales. The case of *Ryall* v. *Rolle* (1 *Atk.* 165. 1 *Vez.* 359.) arose under the bankrupt act of 25 *Jac.* I. which has a special provision, rendering liable to the commission, goods in possession of the bankrupt, by the consent of the true owner. The decisions under that act are, therefore, not strictly applicable to cases arising under the statute of *Elizabeth*; but the opinions given in that case were extremely elaborate, and led the judges to an examination of the whole law, respecting fraudulent sales. Mr. Justice *Burnet* observed, that there was no reason for a distinction, either at common law or under the statute of *Elizabeth*, between

conditional and absolute sales of goods, if made to defraud creditors, and that it was difficult, unless in very special cases, to assign a reason why an absolute or conditional vendee of goods, should leave them with the vendor, unless to procure a collusive credit.

The cases in which a postponed delivery has been allowed, are all of them special, as I have already observed. In *Bucknal* v. *Roiston*, (*Prec. in Cha.* 285.) the goods were sold to *A.* the lender of money on bottomry, and the sale was in the nature of a mortgage or security for the loan, and he trusted *B.* the borrower to negotiate and sell the goods for *A.'s* advantage. The Lord Chancellor held the sale good, even against a judgment creditor, as the trust appeared upon the face of the bill of sale, and it was not to *give a false credit, but for a particular purpose agreed upon* at the time of sale. In *Cole* v. *Davies*, (1 *Ld. Raym.* 724.) it was ruled by *Holt*, Ch. J. that if goods of *A.* are seized upon *fi. fa.* and sold to *B. bona fide*, and for a valuable consideration, though *B.* permits *A.* to have the goods in his possession, upon condition that *A.* shall pay to *B.* the money, as he shall raise it by the sale of the goods, this will not make the execution fraudulent, and a subsequent act of bankruptcy by *A.* would not defeat the sale. This case carried the permission of retaining the possession to the greatest length, perhaps, of any in the books. The last observation of Lord *Holt* was clearly inaccurate, as it is contrary to the provision in the statute of *James*, and contrary to what was said by the Lord Chancellor in the preceding case; but the case itself is confirmed by a late decision of the C. B. in *Kidd* v. *Rawlinson*. (2 *Bos. & Pull.* 59.) It was there decided that the purchaser at a sheriff's sale may leave the goods in the possession of the defendant, out of benevolence, and for a temporary and honest purpose. But Lord *Eldon* distinguished that case from one of a creditor buying goods to satisfy his own debt, and he places reliance on the circumstance that the parties did not stand in the relation of debtor and creditor. He said that the purchaser might be considered as the donee of the goods, lending money to the original defendant to purchase them through the medium of the sheriff, and taking a bill of sale, as a security for the money. In such cases it has been frequently said not to be absolutely fraudulent, or not so in point of law, to permit the donor to continue in possession. The only inquiry would be as to matter *of fact*, whether the transaction was really and intrinsically fair and honest. The case of *Buck-*

nal v. *Roiston* is analogous in principle, and more especially the case of *Maggott* v. *Mills*, (1 *Ld. Raym.* 286.) where it was held by the K. B. that if one man lends another money to buy furniture, and takes a bill of sale of the furniture, leaving it in the vendor's possession, and the contract be honest, it is then valid, though the court said, it would not be so, if the goods had been assigned to *any other creditor*, and the possession had been retained.

The same doctrine, accompanied with the same distinction, has been laid down in *Pennsylvania*, in the case of *Waters* v. *M'Clellan*. (4 *Dall.* 208.) *Shippen*, Ch. J. there observed, that "in the case of a voluntary sale of goods, the law, both in *Pennsylvania* and *England*, regards the continuance of the debtor's possession as a badge of fraud. In *England*, the law is the same where the sale is made by the sheriff; but in *Pennsylvania*, a different rule in that case has prevailed : and where a relation, or friend, after a fair purchase at public sale, leaves the goods in the occupation and use of the debtor, it never has been deemed a fraud upon creditors." The learned judge who pronounced that decision, could not have recollected the point ruled by Lord *Holt*, in *Cole* v. *Davies*, and he could not have known of the decision of Lord *Eldon*, for the two decisions were concurrent in point of time.

The cases of marriage settlements form another exception to the general rule. In those cases, the goods are conveyed to trustees for the use of the wife, and the law which countenances those settlements, permits the wife, as *cestui que trust*, to have the possession as part of the trust, as essential to the object of the settlement, and as being considered the same as possession by the trustees. The case of *Haselinton* v. *Gill*, (3 *Term Rep.* 620. *in notis*,) of *Cadogan* v. *Kennet*, (*Cowp.* 432.) and many others which might be referred to, all proceed upon this principle, and they, of course, have no bearing upon the present question. Indeed, there is no case which sanctions such a sale as the one in the present instance; for here no reason whatever appears for withholding delivery of possession, and the sale must, therefore, be considered, in judgment of law, as fraudulent and void against the creditor. Fraud is a question of law, and especially, when there is no dispute about the facts. It is *the judgment of law on facts and intents*, as has been frequently observed by judges of the greatest eminence. The length of time for which the possession is to be withheld is not material, and does not affect the principle. Thus, in the late case of *Paget* v. *Perchard*, (1 *Esp. N. P.* 205.) the

sheriff was sued for seizing goods in execution, which had only the *day before* been sold by bill of sale to the plaintiff, as assumed creditor, but who had suffered the goods to remain with the defendant, and to be used as his own. Lord *Kenyon* ruled that this sale was fraudulent in law, as against a *bona fide* execution, and nonsuited the plaintiff. A like decision was made by Lord *Ellenborough*, in the similar case of *Wordall* v. *Smith*. (1 *Campb. N. P.* 332.)

The general principle involved in this discussion, is extremely important to the commercial interests of the community, and to confidence and integrity in dealing. The law, in every period of its history, has spoken a uniform language, and has always looked with great jealousy upon a sale or appropriation of goods, without parting with the possession, because it forms so easy and so fruitful a source of deception. Lord *Kenyon* said that he lamented that it was ever decided that the possession and apparent ownership of personal property might be in one person, and the title in another, and he thought it would have been better for the public, if the possession of such property (except in the case of factors) were to carry the title. (7 *Term Rep.* 234.) The value of the principle, and its necessity, were perceived and felt as early as the age of *Glanville;* for he observed, when speaking of pledges, (*Lib.* 10. c. 8.) that " when a thing is agreed to be placed in pledge, by a debtor to a creditor, *and delivery does not follow*, it becomes a question what shall be done for the creditor in that case, *since the same thing may be pledged to other creditors both before and after.* And it is to be observed, that the court will not regard such private arrangements, nor intermeddle therewith, or *sustain a suit thereon.*" This was acknowledging the mischief, and admitting the remedy, under the same enlightened view of public policy and private interests, which some of the decisions of Lord *Mansfield* announce, at the period of the full growth and maturity of the commercial system. There is also a case in the *Book of Assises*, f. 101. pl. 72. 22 *Edw.* III. which is much to the present purpose. An action of trespass was brought for wrongfully taking some cattle, and the jury found that the defendant had received from the bailiff the beasts, on an execution which had issued for him against one *B.* and that the beasts belonged to *B.* at the time of the judgment, and that he afterwards, by deed, gave them to the plaintiff to delay the execution: and the jury being required by the court to say *who took the profits of the same*

*beasts in the mean time*, they answered, that the *donor did.* Theu *Thorpe,* J. declared: " I conceive the gift to be of no value, and I hold, that he to whom such gift was made, was only keeper of the beasts, to the use of the other, because, there was fraud, &c. *for otherwise, a man could never have execution of chattels ; wherefore, take nothing by your bill.*"

We may, therefore, safely conclude, that a voluntary sale of chattels, with an agreement, either in or out of the deed, that the vendor may keep possession, is, except in special cases, and for special reasons, to be shown to, and approved of by, the court, fraudulent and void, as against creditors. This is clearly not one of those cases, and the defendant is, therefore, entitled to judgment.

Judgment for the defendant.