Gibson J.
The Star. IS. Eliz. does not, in words, declare a conveyance of goods fraudulent, where the vendor retains possession; but in general terms renders void all conveyances made to the end, purpose, and intent of defrauding creditors. Hence it becomes incumbent on the Courts to determine, from all the circumstances of the case, whether the conveyance be, or be not, made with a fraudulent intention ; and in judging of that, it is held, that any neglect in leaving the vendor in possession, is fraudulent within the statute. The general rule is, that the possession must be transferred to the purchaser; and to this, I propose to examine such exceptions as have been urged. It has been said, the rule does not apply to conditional sales; but that is altogether without foundation, for neither this statute, nor the 27 Eliz; c. 4, which provides for the securing of purchasers, makes any difference between absolute and conditional sales. The only question in any case, is, whether the sale is fraudulent; and if it be, it is within the statute. Delivery of the subject matter of the contract is as requisite in the case of a mortgage of goods, as it is in the case of an absolute sale. In Ryal v. Rowles, 1 Ves. 359. S. C. 1 Atk. 162, the cases on the point are ably examined, snd it is conclusively shewn to be immaterial whether the sale be conditional or not. Again, it is said, wherever, by the terms of the contract, it appears possession was not intended to follow immediately, the case is not within the purview of the statute. This, I *279 apprehend, must be taken with great. qualification. The cor, tract, and the evidence of it, are secret matters between, the parties themselves, and can afford no notice to creditors." What will it avail then, that a person intending to cover bis propertv by a sham sale, has it expressed in the contract, that he is to retain indefinite possession? Such a conveyance would bear the stamp of dishonesty on its front. I take it to be necessary, not only that retention of possession be part of the contract, but that it also appear to be for a purpose, fair, honest, and absolutely necessary ; or, at. least, essentially conducive to some fair object the parties had in view, and wh ich constituted the motive for entering into the contract. It is necessary, not only that appearances should agree with the real state of things, but also, that the real state of things should be honest, and consistent with public policy, and that it afford no unnecessary facility to deception. In Bucknel v. Royston, Free, in Ch. 285, the vendor retained possession of the goods as a trustee for the purchaser. Those goods were shipped for the East India market, and to have taken them out of the possession of the vendor, who went as supercargo, would have tended to defeat the very object of the mortgage, which included the produce and advantage that might be made as well as the goods themselves. So in Ga-do gan v. Kennet, Co'wp. 432, the object of the contract was to create a trust, fair in itself, with which retention of the possession was not only consistent, but absolutely necessary to its performance. ' A settlement of personal property at the marriage of the owner is a fair transaction; and one, which the policy of the law does hot require to be deemed fraudulent. All the late cases, in which the transfer has been sustained, have gone on the ground, that the want of delivery was absolutely necessary to effect some fair purpose of the parties. But I take it, where the motive of the sale is merely security to the vendee, and the owner is permitted to retain all the visible marks of ownership^ for no other reason than, the convenience of the parties, the contract will be void, al- ¡ though the reasons for the arrangement be inserted, and the possession be consistent with the deed.. The law will not, and ought not to permit the owner of personal property, to create an interest in another, either by mortgage, or absolute sale, and still to continue to be the ostensible owner; and where the creating of such an interest is the sole.object, the *280 «onveyance will be fraudulent, whether it contain a stipulation for retention of possession, or not: for to indulge the motive that led to the arrangement, would be against true p0’¡Cy, Meggot v. Mills, 1 Ld. Raym. 286, is a case wholly irreconcilable with principle, and, I apprehend, not law. The assignor purchased the goods with money borrowed from his .'andlord, and as a security made a bill of sale to the landlord, but retained possession. What was that, but to create, on personal property, a lien’existing separately from the possession, which the law abhors? Lord Holt went upon the ground, that the possession was according to the terms of the agreement, and thie contract fair: and so indeed it was as between the parties, but it was deceptive as to the public; and a creditor ought not to be suffered to secure himself, by means that may ultimately work an injury to third persons. The object of the parties might have been attained without any (at least with less) risque to the public, by the landlord himself becoming' the purchaser in the first instance, and permitting the tenant to have the use of the property: in' which case, the transaction would have been a safe and fair one; and that course should have been pursued. In Barrow v. Fax-ton, 3 Johns. 258, the judgment of the Court may have been right, on account of the fraud actually meditated by the purchaser from the person who had before conveyed, but the reason given for the decision, is an unsound one. /Where the only object is to create a lien, and at the same time, to retain possession, no matter how meritorious the debt may be, the conveyance will be fraudulent ;N and this was after-wards so decided by the same Court, inlSturtevaht v. Ballard, 9 Johns. 337. Were it otherwise, delivery of possession would not be requisite in any case of a mortgage, which is clearly not law. /Where possession has been retained without any stipulation in the conveyance, the cases have uniformly declared that to be, not only evidence of fraud, but, fraud per se.‘ Such a case is not inconsistent with the most perfect honesty ; yet a Court will not stop to inquire, whether there be actual fraud or not; the law will impute it at all events, because it would be dangerous to the public to countenance such a transaction under any circumstances. The parties will not be suffered to unravel it, and shew, that what, seemed fraudulent, was not in fact so^ Would it be less against sound policy to sytffer a vendor to remain in pos *281 session, under an agreement to that effect expressed in the conveyance, and thus to create a secret incumbrance on his personal property, when to the world he appears to be the absolute owner, and gains credit as such ?xThe'inference of meditated fraud equally arises in both cases."'- In the first, why retain possession against the terms of your own agreement, and thus hold out to the world the appearance of a state of things which does not exist ? In the second, why sell at all, before the period at which the contract is to be carried into effect ? The inference is as strong in the one case, as in the other, that no consideration passed ; that the transaction was merely colourable j and that the parties intended to hold the sale in reserve, to be used against creditors at a convenient season. The inclination of my mind is1, to give the statute a liberal, perhaps" an enlarged construction, by putting' the rule, requiring a change of possession, on grounds of public policy, and confining its exceptions to those cases, where, from the very nature of the transaction, possession either could not be delivered at all, or, at least, without defeating fair and honest objects, intended to be effected by, and which constituted the motive for entering into the contract. Where possession has been withheld pursuant to the terms of the agreement, some good reason for the arrangement, beyond the convenience of the parties, should appear. I have been induced to consider this point at some length, as, judging from our reports, it is, in some measure, new in this state.|j To come however, to the case before us : I do not object to the transaction, altogether on the ground of the possession not having been immediately delivered. The hides, being in the process of tanning, could not be removed without great deterioration; and, until finished, were unfit for market. The bark and tools, were necessary to complete the process: and I think, the fair construction of the contract is, that all was to be delivered as soon as the leather should be in a fit state to be sold. Possession of the hides in the vats, to enable the mortgagor to complete the tanning, would have been unavailing without possession of the tan-yard at the same time, which was not intended to be included in the mortgage. If the case stood clear of objection on another ground, Í think a good reason might be assigned for the mortgagor continuing in possession as the agent of the mortgagee. I can see no objection to an absolute sale of *282 an article undergoing a process of manufacture to be delivered when finished; and if such a sale would be good, a mortgage under the same circumstances would also be good. If however, the intention were to conceal the lien thus created, and the transaction were industriously kept secret, it would amount to actual fraud. But where, from the nature of the-transaction, possession cannot be given, the parties ought in lieu, to do every thing in their power to secure the public from that deception which the possession of property without the ownership always enables a person to practise. When a ship at sea is sold, the grand bill of sale is delivered, and that devests the vendor of his last badge of ownership ; and when goods are too bulky to admit of manual possession, the key of the room is handed over. In every case where possession is not given, the parties must leave nothing• unperformed, within the compass of their power, to secure third persons from the consequences of the apparent ownership of the vendor. Here the defect is, that the articles conveyed are not described, or particularised, either in a schedule, or in the body of the instrument. This is fatal. In a case of this kind, the slightest neglect in any circumstance the nature of the case may admit of as an equivalent for actual possession, is unpardonable. Where there is to be delivery at the time of the sale, a schedule or description may be unnecessary, for it could not afterwards be alleged, that an interest passed in any thing not then delivered: but where the goods are'to remain with the vendor, and nothing in particular is specified as the subject of the grant, there, is imminent danger of fraud. The vendor continuing to treat the property as his own, it would be almost impossible for a third person to shew, by evidence dehors the deed, what did, or what did not pass. What was to prevent the plaintiffs here from covering any quantity of property of the kind expressed in the mortgage ? The transaction being secret, John Hancock might have continued to carry on business, and purchase hides, bark, and tools, as usual; and whether he should be able to shelter such property under the mortgage, would depend on the secrecy and adroitness with which the matter was managed. I do not suppose the parties had in fact a fraudulent view, but as such a transaction might be turned to a dishonest use, it was their duty, as far as in their power, to secure the public against it. In Wilt v. *283 Franklin, 1 Binn. 502, a schedule was not thought necessary, as there was an assignment of the whole property ; but there was an intimation, that where only a part is conveyed, it may be necessary, and the want of it, even in case of a general assignment, was held to be a circumstance, though not conclusive evidence, of fraud. Here the assignment was but of a part. Perhaps a more satisfactory reason for dispensing with the schedule, in Wilt v. Franklin, than that expressed by the Court, is, that the conveyance was made with a view to immediate delivery, which was prevented by accidental circumstances. Where possession is to follow the sale, there can be no danger from the want of a specification, because from the nature of the transaction, the parties cannot pretend with success, that any thing passed that was not actually delivered. But there would be great danger of imposition, if a contract so vague as the present, should be held available, when its existence was a secret to the public, and there was no act of notoriety to be performed by the parties to mark the extent of its operation. In such a case, a single circumstance of fraud, should be considered conclusive evidence. I am of opinion, therefore, the judgment should be affirmed.
Duncan J.
The case stated is one, in which the mortgage is not impeached on the ground of actual fraud. If it were so impeached, the common law, without the aid of statutes, would reach it and render it void.
The mortgage, and the pledge or pawn of goods, seems generally to have been confounded lately. A just discrimination has been attended to, and explained. The pawn or pledge is delivered to the pawnee, with the right to retain it, as a security for his debt. The legal property does not pass, as it does in the case of a mortgage with condition of defeasance. The general ownership remains with the pawner, and only a special property passes to the pawnee. Cortelyou v. Lansing, 2 Caines' Cas. in Error, 202. Barrow v. Paxton, 5 Johns. 258. In some cases, delivery is essential to a pledge. Pow. on Mort. 3,4. A mortgage is considered as an immediate disposition, to take effect immediately on possession, in contemplation of law. In a mortgage of lands, the possession usually remains with the mortgagor, and the grantor is entitled to receive the rents until the grantee is *284 entitled to demand the money; but not so of personal pro» perty. In Ryall v. Rowles, 1 Ves. 348. 1 Atk. 165, though it was a case depending on the bankrupt la\vs, and does not decj(je tjje generai question at common law, or under the statute of Elizabeth, yet the opinions of the Judges have a direct bearing on the question. Burnet J. draws the true distinction between the inortgage of goods and lands. There is no way of coming at the knowledge of who is the owner of goods, but by seeing in whose possession they are. The title deeds give the information as to lands. Therefore in equity, a first mortgagor wid be postponed, if he neglects to take them into his possession. He is punished for this as a fraud. A mortgage is an immediate sale. Although afterwards by performing the condition, under the indulgence of a court of equity, the thing-may be redeemed, yet till the performance, the conditional vendee is the absolute proprietor thereof, though subject to be divested by performance. There is a difference between the mortgage of land and the pledge of goods. The mortgagee has an absolute interest in the land, whereas the pawnee has but a special property to detain them as his security. The same Judge in the report in Atkyns, is stated to have observed, that the continuance in possession of the goods mortgaged, was fraudulent at common law, and void by the statutes of Elizabeth. The law as laid down by Ch. J. Parsons, is in conformity to this. ! The mortgage of a chattel is a pledge; that to such pledge a delivery of the chattel is necessary, and that every such mortgage where the parties stand in the relation of debtor and creditor, unaccompanied with such possession as the subject matter is capable of, is fraudulent and void, against all other creditors, whether the debts were contracted antecedently or subsequently to such mortgage. Portland Bank v. Stubbs and others, 6 Mass. Rep. 422. Jewett v. Warren, 12 Mass, Rep. 300. The case of a vessel at sea mortgaged, is the strongest evidence of the universality of this rule. A bill of sale or a mortgage of a vessel at sea is valid, provided the munipients respecting the title are delivered up, and possession, as soon as it can be conveniently done, taken of the ship on her return. Morgan’s executors v. Biddle, 1 Yeates, 3. In the case of a ship at sea mortgaged, there must not only be a delivery of the. documents, but all diligence must be used to take actual *285 possession on her arrival in port; and if a sale were made abroad, and possession delivered without notice of such mortgage, the sale would prevail. 6 Mass. Rep. 425. A previous sale of a ship at sea, although absolute in its terms, is not complete, and perfect for want of delivery of the vessel. All the writers on this subject speak of a subsequent possession within a reasonable time as necessary to complete the transfer, at least with respect to creditors. Notice alone would protect such previous transfer unaccompanied with possession. Lamb v. Durant, 12 Mass. Rep. 54. Consider this on the principle of a conditional assignment. An absolute unconditional assignment of goods, without delivery, is fraud ; but where the possession is consistent with any condition or trust expressed in the assignment, it would not be so considered. 3 Wils. Bac. Ab. 312, where all the cases are collected. So in this Court, this was a principle recognised in Dawes v. Cope, 4 Binn. 258, and in the Supreme Court of the United States. Hamilton v. Russell, 1 Cranch, 302, and the United States v. Hove, 3 Cranch, 73, and in New York, 5 Johns. 258. But in Sturtevant et al. v. Ballard, 9 Johns. 337, this principle is thus explained, and restrained. Where by the bill of sale, a part of the consideration was, that the goods, being the tools of trade of the vendor, should be used and occupied by him for the space of three months, this assignment was held void against a subsequent creditor. A voluntary sale of chattels, with an agreement contained in the deed or act of it, that the vendor may keep possession is, except in special cases and for special reasons, to be shewn and approved of by the Court, fraudulent and void against creditors; and Ch. J. Kent there states, that there is no case which sanctions such a sale, unless there appear reasons for withholding the possession, and the law in every period has spoken an uniform language, and has looked with great jealousy on a sale or appropriation of goods, •without parting with the possession, because it forms so easy and fruitful a source of deception.
This was an immediate appropriation of the property, to take effect immediately, and not at a future day. There could have been an actual delivery of the tools and bark. There could have been a symbolical delivery. The vats, with their contents, might have been so delivered j for the property of bulky articles in a ware-house, may be deli *286 vered by a delivery of the key which opens it, and which is the only delivery they are capable of. Here it is contended, that as well by express covenant as by the nature of the transaction, the possession was to remain in the mortgagor; that the wet hides could not be removed without injury ; besides, in order to render them an adequate security, they were to be brought into leather. But here all means were not used to transfer the thing which the circumstances admitted of; here was neither actual nor symbolical delivery ; neither inventory nor valuation. There is another class of postponed delivery, not partaking of fraud, where the parties do not stand, antecedent to the conveyance, in the relation of debtor and creditor, as Bucknal v. Roiston, Prec. in Ch. 285. Cole v. Davies, 1 Ld. Raym. 724. Waters’s exrs. v. M'Clellan, 1 Dall. 208. Marriage settlements form likewise another exception, as Cadogan v. Kennet, Cowp. 432, for there the possession of the wife was the possession of the trustee; part of the trust and the essential object of the settlement. It was not necessary here that there should haye been an actual removal of the wet hides. The articles could not have been removed without considerable expense and loss. But still there should have been such delivery and possession, as the thing was capable of; and this may be compared to the sale of a brick-kiln, where there could not be a removal without expense and loss, and where it is not usual to remove and put them in a warehouse for sale. But in that case it has been determined by the Supreme Court of Massachusetts, that there must be a delivery and possession, so far as the matter was capable of. Allen v. Smith, 10 Mass. Rep. 308. It is not an unimportant consideration with me, that this was a disposition of all his stock in trade, disabling him to pay any debts he might afterward contract, on the faith of his notorious possession and ownership ; nor can I see any disposition of property which, in its consequences, would tend more to produce fraud, than such a mortgage, unaccompanied by schedule or valuation, and incapable of being ascertained from any thing contained in the instrument, either as to quantity or value; and I must confess, that the want of inventory or valuation in an assignment to a particular creditor of part of a debtor’s property, has made a deep impression in my mind. The continuance in possession, and the covenant to work up the raw material, was not in the nature *287 of a condition, until the performance of which the mortgagees were not entitled to possession, but a personal covenant that he would work up the raw material. It ivas not conditional, to take effect at some future time, but a personal covenant. The separation of the title and possession is totally incompatible.
It has been pressed on the Court as a case in which the mortgagor, from the covenant to work up the hides, would be considered as the servant of the mortgagees, and his possession held the possession of the mortgagees. This is capable of a satisfactory answer. For this would be a secret trust, contrary to the visible ownership and possession. The debtor’s possession as to all the world is the same, in all respects, as before the assignment. There cannot, in such case, be a concurrent possession ; it must be exclusive, or it would, by the policy of the law, be deemed colourable. It would be no less difficult to support the mortgage, than that of a store of goods, with liberty to the mortgagee to continue the trade and sell the goods. A difficulty occurred to me, whether the continuance of possession by the same owner was merely a badge of fraud, to be found by a jury; or whether it was a fraud per se; a fraud in law to be determined by the Court. But, as is observed by Ch. J. Marshall, in Hamilton v. Russell, 1 Cranch, 316, modern decisions have taken this question up on principle, and have determined that an unconditional sale, where the possession does not accompany and follow the deed, is, with respect to creditors, on a sound construction of the statute of Elizabeth, a fraud, and should be so determined by the Court. The distinction Courts have taken is, between a deed purporting on the face of it to be an absolute deed, so that the separation of the title from the possession is incompatible with the deed itself; and a deed upon condition which does not entitle the vendee to possession. An absolute deed without the possession, is, in point of law, fraudulent. Such a deed must be considered with intent to defraud creditors. When the possession is inconsistent with the deed, the law is settled, that it is not merely evidence to be submitted to a jury, to draw a conclusion of fraud in fact, but it is a fraud in itself, to be determined by the Court. It would be a proof of great improvidence in our laws if a mortgage of goods unaccompanied by possession should be valid; and that in the case of lands, *288 where possession is not, as in- chattels, the legal evidence oí title, provision should be made, that unless a mortgage is re- ' corded within six months it should be void. In chattels possession is the strongest evidence of ownership. That a secret mortgage to secure a creditor, without any change of possession, the debtor in the daily and constant occupation-of the goods, without valuation, or inventory or specification accompanying the instrument, should be valid, and bind the property against creditors, or sales made by the debtor without notice, would be a reproach to the law. It ought not, it cannot be so. If it were so, it would put an end to all credit. Credit is given on the possession, on the faith, that tne man who was once the owner of goods continues the owner, until he parts with the possession. Indeed if this instrument binds these goods, a parol executory agreement would equally bind them: an agreement to give the goods in security. I know not any doctrine that would tend to annihilate all credit, more than the establishment of such a princif pie. A contract such as this, where the possession of goods is to remain in one man, while the right remains in another, ' is, as to all third persons, fraudulent. The security by mortgage of lands, depends on the title and on the registry; of a mortgagee or pawnee of personal property, on the right of the mortgagor or pawnor, and on the delivery of the chattel mortgaged or pledged; the custody and possession of which is to remain in him, be detained by him, as a security for his debt. It therefore appears to me, that by the principles of the common law, and the settled construction of the statutes of Elizabeth, to a mortgage of chattels, delivery is necessary; that every such mortgage, when the parties stand in the relation of debtor and creditor, unaccompanied with such possession as the subject matter is capable of, is fraudulent and void against all other creditors, whether the debts were contracted antecedent or subsequent to the mortgage.
Judgment affirmed.