Johnson, J.
delivered the opinion of the Court.
The Court neither regards it as a duty, nor do they feel the inclination, to enter upon any inquiry as to the very many facts, which are interwoven into the grounds of this motion. It will suffice to remark of them, generally, that if the Judge was right as to the matters of law, there were too many circumstances in favor of the verdict, to justify this Court in ordering a new trial on the evidence, whatever doubts'we may entertain of the merits. Divesting the case of this feature, the grounds of the motion complain of error in the presiding Judge: 1st, In rejecting the evidence of Joseph P. Jones. 2d, In rejecting the evidence of Littleberry Cochran. 3d, In admitting the evidence of William D. Cooper. 4th, In instructing the jury, that a debtor might indulge his feelings in preferring one creditor to another, even pending a suit against him. 5th, In instructing the jury, that Stephen Terry’s remaining in possession of the slaves in ques- *571 lion, after an absolute sale to the plaintiff, was a badge only, and not conclusive evidence of fraud.
1st and 2d. The incompetency of the witnesses, Jones, and Cochran, appears to me so palpable, that it is matter of some surprise that the question has been raised. Cochran is bound by express contract, as the surety of Wash, to indemnify the defendant against this very verdict; and it is difficult to conceive of an interest more direct. The execution, under which the slaves were sold, was at the suit of Wash, the administrator of T. Jones, of whose estate Joseph P. Jones’ wife was a distributee. If the plaintiff recovered, Wash was bound by his bond to refund the amount to defendant, and that, of course, would be so much loss to the estate; and there is no principle more clear, than that one cannot be a witness to increase a fund, in which he has an interest. His living apart from his wife, dealing separately, and having given bond not to interfere with her property, cannot vary the question. Separate interests might, it is true, be created by the intervention of trustees, but in law they are identical, notwithstanding any contract that may exist between them. Jones, it seems, thought he had no interest, and therefore was willing to release; but it is understood that he positively refused to relinquish the interest of his wife. He was therefore properly rejected.
3d. It is not perceived, that William D. Cooper had any, even the most remote, interest in the event of this suit. He had before that time become jointly bound in a note with Stephen Terry, which is said to have been discharged by the sale of the slaves now in dispute to the plaintiff. If that be true, there is an end of his liability; if not, the verdict in this case cannot discharge him. If the holder of the note accepted the negroes in payment, as unquestionably he might, then the note is paid; and if he lost the negroes, it was his own fault, or folly, for which Cooper, is not responsible. If he did not, then there is no liability. He was therefore properly admitted.
4th. The fourth question admits of as little doubt. If I were at liberty to form a system of insolvent laws, according to mf own notions of moral right, I should very much incline to provide, that when the fact of insolvency was apparent, creditors, of all grades, and classes, should come in for an equal distribution of the insolvent’s estate, and that he should not be permit* *572 ted to give a preference to one, whatever might be (he motive. But even that provision would not reach this case ; for at the time of the sale of these negroes, the fact of Stephen Terry’s insolvency had not been judicially ascertained. On the contrary, the witnesses say he could have gained credit on the faith of these identical negroes; and even now, the fact of his insolvency is only known as collateral to the issue in this case. These ai'e, however, useless speculations, for there is no question, that payment to one creditor is good, although the debtor may not have the means of paying all his debts.
5th. The fifth and last objection involves a question of great interest; and l have bestowed on it all the attention, which its importance demands. The result is a conviction, that the vendor’s retaining the possession, after an absolute, and unconditional sale of chattels, is not conclusive, hnl prima facie evidence of fraud.
All the cases on this subject, both English, and American, have been put in requisition by Chancellor Kent, in the 2d vol. p. 403, et scq. of his learned Commentary on American law, and have been reviewed with great learning and ability. And to that chapter I will refer, as containing all that is useful on the subject, which is to be found either in the English, or American cases: although I cannot but feel, that I am treading on doubtful ground, when I venture to differ from the conclusion to which that able jurist has arrived, as to the policy of the rule before laid down.
The principle, that all contracts, having for their object a fraud upon the rights of third persons, are void, is concurred in by every one. It arises out of natural right, it enters into all the transactions of life, and constitutes one of the strongest and most essential bonds of security. We differ therefore only in tbe mode of giving it effect. Ordinarily, it is not a matter of much consequence, when the principle is correct, as to the means by which it is to be carried into operation ; for a community can accommodate themselves very readily to any rule, which is well understood, and is reasonable in itself. It does, however, sometimes happen, instances of which arise out of positive legislation, that a positive rule opposed to the good feelings, and usages of the community, is suffered to lie dormant, and inope-patjvp altogether. In other instances, the strong arm of the *573 law has been able to enforce the rule for a time, but even this engine becomes powerless when opposed to the will of a whole community; and the rule is. only remembered for the particular injustice it has done. A wise law-giver should, therefore, inquire whether the rule proposed, even to give effect to a correct principle, is calculated to promote justice, and the happiness of mankind.,
These remarks have grown out of my -own knowledge of the habits of the people of this country, and their mode of thinking and acting, and a firm conviction that the converse of the rule, before laid'down, would do violence to the feelings and opinions of the community; and the cases, to which 1 shall have occasion to refer, will I think sufficiently shew, that they are universal.
An improvident, or unfortunate child, or parent, or a beloved friend, has become embarrassed; his whole fortune is inadequate to the demands upon him, and a sale under the hammer is the only alternative: superabundant wealth enables you to gratify your good feelings iu holding out relief to him, and perhaps lo a numerous family. Is the law so cold, and unfeeling, so stern, and inflexible, that you shall not leave to his use one article of property, which he before owned, but an insatiable creditor may lay his hand upon itl — not even the bed on which he sleeps, or the servant endeared by his fidelity, and whose services, use has rendered, in a degree, indispensalile 1 I think not. And' if such a rule did exist, I doubt still more, whether, on such a case made, a jury could be found, who would give it effect. 'This case is perhaps highly coloured, but, in principle, I cannot distinguish it from any other, where the transaction is honest. Those who maintain the opposite side of the question, predicate their argument on the facilities of practising frauds through this means, and the difficulty of tracing them out; and I agree that there is much truth and good sense in the argument. But a security, although not perhaps wholly adequate, is found in the juries of the country, drawn from the very atmosphere of the transaction, where these things always make the first impression ; and, aided by the suspicion of she law, which throws the burthen of proof on the purchaser, the.y will most usually arrive at a correct conclusion.
*574 In looking into the cases collected by Chancellor Kent, it will bo scon, that neither the English, nor American Courts, even when the rigid rule, that possession of goods after an ab-soluto sale is, per se, a fraud, has been most strenuously maintained, have been able to give it full effect. Thus, in Bucknal v. Roiston, Free, in Ch. 285, an absolute bill of sale of goods, given by way of pledge for money lent, was allowed as an exception. So of household goods under the circumstances, in Cadogan v. Kennett, Cowp. 432. And in winding up his remarks on the English decisions,, the Chancellor remarks, that “ it has become difficult to determine, when the circumstance, of the possession not accompanying and following the deed, is, per se, a fraud in the English law, or only presumptive evidence of fraud, resting on facts to be disclosed at the trial.” 2 Kent’s Com. 408.
In Pennsylvania, where the rule has been more rigidly adhered to, the exception 'of goods taken in execution is allowed. Levy v. Wallis, 4 Dall. 167. In New-Fork, the rule was thought to have been firmly established in Sturtevant v. Ballard, 9 Johns. 337; but it gave way in the case of Bissell v. Hopkins, 19 Johns. 221, where it was held, that it was only prima facie evidence of fraud, and might be explained. And without travelling the rounds of the States, it may be affirmed, that wherever the rule has been attempted, exceptions after exceptions have been allowed, until it is difficult to ascertain, that it is rigidly enforced any where. Perhaps it is more nearly attained in Pennsylvania, than any where else. Now these cases speak a language which is stronger than any argument which can be drawn ab inconvenienti. It is the voice of mankind, repudiating a policy at war with their feelings, and one which Courts of justice must respect.
The case of Kennedy v. Ross, 2 Mill, 125, is set down by Chancellor Kent, as an authority in support of the rigid rule; and it is true, that the language of the Judge, who delivered that opinion, is pretty strong: but he no where lays down the rule, broadly; and on looking into the facts of the case, it will be found, that it fell within the rule, which I have attempted to vindicate. To repel the presumption arising from the possession of the property, aided by the proof that the plaintiff claimed *575 all the property of Dale, he opposed a naked bill of sale; and from Pwyne’s case, down to the present day, that has beesi held insufficient, here, aud every where else. And such has been the view always entertained of that case.
The case of Madden v. Day, (ante, p. 337) decided at the,last sitting of the Court at this place, went perhaps further in'support of the rigid rule, than any of our own cases had before gone; but that case has come up on a second verdict, and been re-argued at this term, and will be reviewed by my brother Evans in connexion with the case of Howard v. Williams, (infra.) and I will only refer to his remarks upon it.
With a view to get at the pure question of law, I have avoided ^mixing up with it, the peculiarities of this case, and will only remark in conclusion, that although the Court would have been better satisfied with a verdict for the defendant, there was evidence, that this transaction was fair, which the jury have thought proper to give its full weight, it was their province to decide upon it, aud the verdict must stand.
Colcock, J. and Evans, J. concurred.
Motion refused.