Sutliff, J.
It has always been held under the statute of frauds-in this state, that a conveyance of land made to defraud creditors, is not necessarily void between the parties. Such a conveyance is only void as against creditors. Burgett v. Burgett, 1 Ohio, 469; Lessee of Douglass v. Dunlap, 10 Ohio, 162; Crumbaugh v. Kugler, 2 Ohio St. 373. By the common law and the statutes of Edward-III. and Henry Til., as well as under the statute against fraudulent deeds, 13 Eliz., chap. 5, conveyances to defraud creditors were not held absolutely void. They have always been considered binding on the parties.
, The mortgage in this case is to be regarded as a conveyance although a conditional one, and if fraudulent, equally subject to the- *348 •common law and statutory law applicable to absolute conveyances. Lancaster v. Dolon, 1 Rawle, 231; Presbyterian Congregation v. Wallace, 3 Rawle, 130; Ledyard v. Butler, 9 Paige, 132; Lewis v. Lewis’ Heirs, 3 B. Mon. 345.
The defendants, in the first place, deny that any debts or liabilities of the intestate, at the time of his executing the mortgage, remained unpaid at the time of his death. And the proof would .•seem very clearly to sustain this averment. But the sufficiency of that fact alone to constitute a good defense in such a case, has, it is believed, never been determined by any reported case in this state. In the cases of Upton v. Bassett (Cro. Eliz. 445), and in Twine’s *case (3 Coke, 80), it was agreed by the judges “that by the •common law, an estate made by fraud should be avoided only by him who had a former right, title, interest, debt, or demand.” And •Sir Edward Coke seems to have regarded the statute against frauds, 13 Eliz., chap. 5, which he terms a right profitable statute,” as ■only expressive of the common law. Co. Litt. 2906. The same •opinion is expressed by Lord Mansfield, 2 Cowp. 434; and the •opinion, that the acts of 13 and 27 Eliz., are only declaratory of the common law, was expressed by Chief Justice Marshall, Hamilton v. Russell, 1 Cranch, 316, and by Chief Justice Kent, 9 Johns. 339.
But it has been, on the other hand, held that the statute of 13 Eliz., chap. 5, was in extension of the common law; and that a conveyance actually fraudulent may be avoided by subsequent creditors. Thus, in Newland on Contracts, 389, it is said “ that deeds which are avoided by the statute of 13 Eliz., are void as well against those creditors whose debts were contracted subsequently to such deeds, as against those creditors whoso debts wore in exist-■ence at the execution of the deeds.” And the master of the rolls, in the case of Taylor v. Jones (2 Atk. 600), certainly expressed a similar opinion upon that statute; and other highly respectable authorities there are to the same effect, both in England and this •country. In a note in 1 Story’s Eq., he says: “Where a settlement is set aside .as an intentional fraud upon creditors, there is •strong reason for holding it so as to subsequent creditors.”
The apparent conflict of authorities upon this subject may perhaps be found to arise from the seeming obscurity as to what hind •of frauds subsequent creditors may take advantage of. The cases .and authorities appear for the most part somewhat obscure upon. *349 this point. It is possible that tho authories may be satisfactorily reconciled by observing a distinction between that class of cases, whore the debtor has made an absolute conveyance by sale or gift to defraud existing creditors without reserving to *himself any trust, and that class of cases in which the fraud would seem to be directed as well against future as existing creditors. Thus, if one possessed of property and of good credit should make a voluntary conveyance of his property with a view to becoming subsequently indebted, and should by means of his former reputation contract debts shortly after tho conveyance of his property, the • creditors being ignorant of the fact, the fraud might well be regarded as directed specifically against such subsequent creditors.. To the last-mentioned class of cases, as including subsequent creditors, should doubtless be added those voluntary and colorable conveyances made and hold under such circumstances as are attended, in law, by the presumption of a secret trust for the grantor, and constituting a continuing fraud. Thus it is laid down in the case of Clark v. French, 23 Maine, 221, that if a deed intended to be absolute, be made without reservation of any secret trust for the benefit of the grantor, although with a fraudulent intent, understood by both parties, to place the property beyond the reach of creditors, although made for a valuable consideration, yet wanting the-ingredient of good faith, it shall be avoided only by creditors existing at the time of the execution of the deed. But if the deed were not absolute in fact, though in form it might bo so, if a secret trust and confidence exist for tho benefit of tho grantor, it should bo hold void against subsequent as well as precedent creditors.
But we do not think the case before us necessarily requires an opinion upon this litigated subject..
The defendants as a second defense deny that the mortgage was made with intent to defraud tho creditors of the mortgagor.
In the case of Crumbaugh v. Kugler, 2 Ohio St. 373, it was held that voluntary conveyances made by a parent to a child without ■ consideration, when made in good faith, and without intending any fraud to creditors, were valid conveyances as against subsequent creditors, and could *not bo sot aside in case of subsequent insolvency of the grantor for the satisfaction of the claims of such subsequent creditors. Applying the same doctrine to this case, and it would have been lawful for the intestate in 1845, if he had other-means sufficient to satisfy his existing creditors, to have executed. *350 the mortgage to his mother in trust for his children; and if done in good faith, it would not be competent for any subsequent creditor to call such conveyance in question. The mortgage in such case could only, in any event possible, be set aside in favor of subsequent creditors by showing the transaction to have been mala fide with the intent of defrauding cereditors.
Again, supposing the mortgagor at the time of executing the note and mortgage to have been honestly indebted to bis mother in the sum expressed by the note, although she might have been disposed to forbear enforcing collection, or even exacting security for the same ; under the- general right of a debtor to prefer any creditor, the intestate had the legal right to execute the promissory note and mortgage in question; and when so executed, the same would be valid in law.
Unless, then, the record shows the weight of evidence to be clearly opposed to either of the foregoing propositions, we can not say that the judgment of the district court is not sustained by sufficient evidence, or is contrary to law. In considering the evidence to ascertain its apparent preponderance for or against either of those propositions, the conversations of the intestate after the execution of the mortgage, and in the absence of the mortgagee, were not .admissible as evidence in the case.
How then stood the proof upon which the judgment was rendered? The plaintiff gave evidence showing that the mortgagor .shortly previous to making the note and mortgage to his mother expressed fears of being sued for a foreign debt of $400 which he then owed in the State of Virginia, and expressed a fear that his property would have to be sold to pay it; at the same time saying he *owed other small debts about home. Ho also is proven by plaintiff to have said he owed his mother and intended to make a •deed or mortgage to secure her; and that he shortly afterward said he had given his mother the mortgage; and that the mortgagor was -always esteemed a very honest man. The mortgagor would seem from the proof to have had property in his possession, at the time, to the value of probably $2,000, or upward. The plaintiffs give no ■ other evidence of indebtedness of the mortgagor at the time of the execution of the mortgage. But to show that the mortgage was really fraudulent and made to secure the amount of the note as a -secret trust in his own favor, and that he neither owed his mother mor intended the amount of the note ever to be paid either to her *351 or for his children,the plaintiffs must relyupon her testimony which they introduced. But her testimony is that the note was given for ■ money and property by her given to the intestate at different times previous to his giving her the note and mortgage; that the same amounted to $600 or $700; and that she made an advancement to him, she thinks, at the time of receiving the note and mortgage, but does not recollect the amount. She also says in relation to the sums advanced: “when I made the advances I did not expect to get it back,” and that she had assigned the note for no other consideration than that of love and affection to the children of the intestate. The deposition of Anna Roff was taken by the plaintiff, as is certified, in the absence of any one ajDpearing for defendants. Her answers indicate on her part, so far as wo can judge from the deposition, no unwillingness to answer any questions, and a highly creditable regard to truth. In many of her answers, it is true, she conforms to the word used in the question, and uses the same word “ give ” or gifts interchangeably for advance, or advancements. She says, too, that when she made the advances she “did not expect to get it back again.” But she nowhere says that the intestate did not promise her that he would pay ; *or that she even intimated to him that she did not intend to exact payment. And for some reason, counsel seem to have avoided propounding to her in the deposition any question upon that important point. There is nothing indeed in her testimony going to contradict the statement of the mortgagor previous to his giving the note, that he owed his mother. And although at the times of making the advancements to him (in consideration of his infirm health or any other circumstances of her son or his family) she might not have expected to ever realize payment for aught that appears in her deposition, she clearly had the right to collect her claims for her own use if she saw fit; or to appropriate the same with or without his request to his family or children instead of leaving the same uncollected in his hands.
Nor is there anything in the proof inconsistent with the other proposition, that the note and mortgage, being expressive of the amount, principal and interest, of the advancements by his mother, were designed as an advancement by the intestate to his children. There is certainly no proof going to show that the intestate had not sufficient other property to pay all his liabilities at that time.
If it be said that the intestate, previous to making the note and mortgage, expressed apprehensions in relation to the $400 debt, it *352 may well be replied that he spoke of his indebtedness to his mother at the samo time, and of his intentions to make her the mortgage; and that both before and after making the mortgage, he spoke of it openly, and without concealment.
It is not in proof that the intestate had in fact any judgments against him at that time or afterward. And in the absence of all such proof, or where the proof is equally balanced, fraud can not be presumed.
It is sufficient, therefore, in conclusion, to say, that we are unable to perceive from the record before us, that the judgment of the district court was not sustained by sufficient evidence. Consequently wo can perceive no error *in that court’s refusing a new trial in the case. The judgment of the district court must be affirmed.
Brinkerhoee, C. J., and Scott, Peck, and Gholson, JJ., concurred..