## HERRON *against* FRY.

### IN ERROR.

H rented a farm from S, and being in arrear for rent, his personal property, consisting of his stock, farming utensils, &c., was sold on a landlord's warrant, and bought by F, his brother-in-law, who lived at some distance, and left it in H's possession; F executed to S a note for the rent of the farm on which H then lived, for the ensuing year, and on the same day, he and H entered into a written agreement, by which H was to work on the farm rented from S to F for one year, at $5 per month: and F was to furnish all farming implements, and horses, cows, and every utensil that is necessary to enable H to work said farm. Afterwards H, being indebted to F in a note, sold F wheat which was growing on this farm, before this agreement, and which was not sold on the landlord's warrant, and a receipt was executed for the amount, and H went with F *alone*, and shewed it to him; H continued to live on the farm with the same stock, and under an agreement for that purpose, he cut the wheat and stacked it on the farm, where it was levied on about a month after, and sold by a constable upon an execution against H, as his property, to N. In a suit brought by F against N, *held* that it was not error to charge the jury that if the transactions between H and F were *bona fide*, and the possession of the wheat was actually transferred by H to F, F was entitled to recover.

If in truth H was fairly employed and paid by the month by F, F was as much in possession by H as his servant, as if a stranger had been employed by him.

Whether the possession always remained in H or was at once transferred to F, and was ever after in him, depended on whether he was really the tenant of S, and H was really the hireling, and this was a question for the jury.

If the cause be fairly put to the jury on the matter of fact and the law arising upon them, no more can be required of a judge.

ERROR to the Common Pleas of Franklin county.

This was an action of replevin brought by *Fry*, the plaintiff below and the defendant in error, against *Herron*, the plaintiff in error, for a stack of wheat, which *Fry* claimed under parol sale from one *Hiskey*. *Herron* claimed the wheat upon a sale made by a constable to him, on an execution against *Hiskey*.

On the trial of the cause in the Common Pleas, defendant gave the executions in evidence, and proved the sale under them about the last of August, or the 1st September, 1828, to him.

(Herron *v.* Fry.)

It appeared that the wheat had grown on a farm which one *Stewart* had leased for one year, commencing on the 1st of *April,* 1827, to *Hiskey,* who had sown and cultivated the same, that on the 15th *March,* 1828, the personal property of *Hiskey,* consisting of horses, cattle, and farming utensils, used by him on the farm he had rented, and except the grain in the ground, was sold on a landlord's warrant, issued by *Stewart,* and bought by *Fry.* And that this property, after the sale, continued in the possession of *Hiskey.*

*Fry,* who was the brother-in-law of *Hiskey,* lived in Cumberland county, at the distance of seven miles from the farm which the latter had rented from *Stewart,* and on which *Hiskey* continued to reside until after the sale to the plaintiff.

The plaintiff alleged that he was the surety of *Hiskey* to *Dr. Stewart,* and gave in evidence the following papers.

"On the first day of April, in the year of our Lord, one thoua nd eight hundred and twenty-nine, I promise to pay, or cause to be paid, unto *Doctor Alexander Stewart,* his heirs or assigns, the just and full sum of one hundred dollars, lawful money of the United States, being for the rent of his farm, in Northampton township, Franklin county, whereon *Peter Hiskey* now lives, for the year commencing on the first day of April, 1828, and ending on the last day of March, 1829. Witness my hand and seal, the fifteenth day of March, A. D. 1828.

*John Fry,* [SEAL.]

Witness present, *Joseph Fry.*

"Memorandum of an agreement made, concluded and agreed upon, the fifteenth day of March, in the year of our Lord one thousand eight hundred and twenty-eight, by and between *John Fry,* of the township of Newton, in the county of Cumberland, and state of Pennsylvania, of the one part and *Peter Hiskey,* of the township of Southampton, in the county of Franklin and state aforesaid, of the other part, that the said *Peter Hiskey* doth agree to work for the said *John Fry* for five dollars per month, for one whole year, commencing on the first day of April next ensuing this date—he the said *Peter Hiskey,* is to work on the farm that he now lives on, belonging to *Doctor Alexander Stewart,* in Southampton township, Franklin county. The said *John Fry* is to furnish the said *Peter Hiskey* with all farming implements, and horses, and cows, and every thing that is necessary for to enable the said *Hiskey* to work said farm, and to pay the said *Hiskey* for his labour five dollars every month through

the whole year.   Witness our hands and seals the day and year first above written.

*John Fry,*          [SEAL.]
          his
*Peter* x *Hiskey,* [SEAL.]
          mark

Witness present,
*Alexander Stewart,*
*Joseph Fry.*

He shewed also, that on the 8th *November,* 1828, *Stewart* executed a lease to him for the same farm, for the year commencing the 1st April, 1829; and he proved by *Hiskey* that he, after the agreement of the 5th *March,* 1828, worked the farm for *Fry* for $5 per month, the sum agreed on.

It was also in evidence on the part of the plaintiff that *Hiskey* was in his debt on a note which had been given several years before.

He proved that on the 17th *March,* 1828, he went with *Hiskey* to the house of *George Johnston,* a justice of the peace, and there *Hiskey* gave a receipt to *Fry,* for $143, for 28 acres of wheat, and 23 acres of rye; for which *Hiskey* owed *Fry,* who gave up to *Hiskey* the note he held on him.   And it was remarked at the time that they wanted to secure the grain so that other creditors should not sell it again.

The wheat was in the ground, and the plaintiff proved by *Hiskey* that on the morning after the sale of the wheat to him, *Hiskey* went with him to the field where the grain was growing " and shewed it to him and gave it up to him," he said also " I gave him possession of the land and all I had, and worked at $5 per month." It did not appear that any other person was present when this was done.

In *June* following *Fry* agreed to pay *Hiskey* $50 to cut and haul in the grain. They called a witness to be present at this bargain.   *Hiskey* did cut the grain, and stacked it on the farm, which he still occupied, and farmed with the same horses, ' with the exception of a horse which *Fry* had bought, and put on the farm,' the same stock, and the same farming utensils, when the constable sold the stack of wheat to the defendant.

Other evidence was given which it is not material here to state.

The defendant's counsel requested the Court to charge the jury:

1. That the alleged transfer from *Peter Hiskey* to *John Fry*

34

(Herron *v.* Fry.)

was fraudulent and void against creditors, possession not having been delivered at the time of said contract.

2. That *P. Hiskey* having remained in actual possession of the wheat sold, and having continued to farm the land on which it was raised and stacked, the single bill of *Dr. Stewart* from *John Fry*, and the agreement between *John Fry* and *Peter Hiskey*, do not in law vest the possession in *John Fry*.

3. That the single bill of *J. Fry* to *Dr. A. Stewart*, of the 15th March, 1828, does not make *J. Fry* the tenant of *Dr. Stewart*, but was a mere security for the rent to become due from *Hiskey* to *Stewart*, under the article of 25th December, 1826, continued for the second year from April, 1828, to April 1829.

The Court, THOMPSON, President, charged the jury as follows:

The property in question, it appears, belonged to *Hiskey*. The defendant claims it by virtue of a constable's sale, which took place on several executions against *Hiskey*, in the latter part of August, 1828. The plaintiff claims it by virtue of a private sale to him by *Hiskey* himself, on the 17th March, 1828, while the grain was in the ground. The sale of the 17th of March is, of course, prior to the constable's sale, and if it be valid, the title of the plaintiff is to be preferred. The defendant objects to the legality of the sale on two grounds. One is, that it is alleged to be fraudulent and collusive in fact—the other, that it is fraudulent and void against creditors, under the statute of Elizabeth.

If the whole arrangement between the parties, in relation to this property, was a fraudulent contrivance, entered into for the purpose of covering the property from levy and sale for the debts of *Hiskey*, while it in fact substantially belonged to him, it is wholly void against the creditors of *Hiskey*, and the plaintiff cannot recover.

When personal property is sold and transferred from one person to another, it is necessary to complete the title, that there should be an actual delivery, as far as it is susceptible of such delivery. If there is no change of the possession, the sale will be void against the creditors of the seller. Such possession must be delivered as the article admits of. If a ship at sea be sold by the owner at home, it cannot actually be delivered over to the purchaser. It is therefore enough, if the written muniments of title are handed over; but to complete the right the purchaser must use due diligence to take actual possession, as soon as she comes to port; for if he do not, an intervening levy at the suit of a creditor of the vendor will take the property. Here, the property in question was grain in the ground. The only mode of taking posses-

(Herron *v* Fry.)

-sion of it, would be by taking possession of the field on which it was growing. The evidence is, that *Fry* went to the field where the wheat was with *Hiskey*, who says he showed the grain to him, and gave it up to him. This was all the delivery of which it was then capable. It must remain in the field until after it was harvested. It was not expected that *Fry* would remain on the ground himself, or hire a man to remain there, to keep the actual possession. But as soon as the grain was cut, it was capable of being removed, and it was incumbent on the plaintiff to show, either that he had actual possession of it himself, or that some agent or servant of his, had the possession for him; or that it was stacked on ground of which he had possession, by being owner or tenant. The grain, it appears, was cut by *Hiskey*, and hauled to the barn yard on the place, and there stacked. *Hiskey* still continued in possession of the place, and farmed it as he had before done, with the same horses and stock. While the grain remained there in stack, it was levied on, and sold to the defendant. The plaintiff contended, that before the grain had been cut, immediately after the sale to him, the possession of the farm was transferred to him, and held for him by *Hiskey*, as his servant. In proof of this, he relies on the two agreements of the 15th of *March*, 1828; by one of which *Fry* binds himself to pay the rent of $100 to *Dr. Stewart*, of the farm on which *Hiskey* then lived. The agreement is not signed by *Stewart*, but it is said that both of the papers are in his handwriting. He is a witness to the other, which is an agreement between *Fry* and *Hiskey*, by which *Hiskey* agrees to work a year for *Fry* for $5 per month, commencing on the first of April then next; the said *Hiskey* to work the farm he then lived on, "said *Fry* to furnish said *Hiskey* with all farming utensils, horses, cows, and every thing that is necessary to enable him to work the farm, and to pay *Hiskey*, for his labor, five dollars per month." On the 5th of December, 1826, *Stewart* had rented to *Hiskey*, by a written lease, for a year, which ended 1st April, 1828. *Hiskey* states, that he gave up the land and all he had to *Fry*, and agreed to work for him at $5 per month. The purport of these two agreements is, that *Hiskey* should remain on the land, and should work it for *Fry*, who should pay the rent for it, and his wages, for his labor. Under these agreements, *Hiskey* continued to live on the land and to farm it, as he had done before. Under another agreement with the plaintiff, he cut the grain and hauled it to the barn on the place and stacked it up. If you believe, from the evidence, that the land continued still in the actual possession of *Hiskey*, under these agreements, after the sale of the grain to the plaintiff, until the levy and sale of it to the defendant, and that after it was cut it continued in the actual possession of *Hiskey*, and if you are also of opinion that sufficient time elapsed, after it was cut, before the levy

(Herron *v.* Fry.)

by the constable, to allow it to be removed and placed in the pos-session of *Fry*, the defendant is entitled to your verdict: if you believe he purchased the property at constable's sale, as is alleged.

But if the possession of the goods was actually changed—If, af-ter it was cut, the grain was put into the actual possession of *Fry*; or if it were removed to some part of the farm, of which, at the time, he had actual possession, the transfer to *Fry* would be good, and he ought to recover.

The defendant excepted to this charge.  The verdict was for the plaintiff.  The defendant moved for a new trial; and after ar-gument, the court being equally divided on the question, the rule to shew cause why a new trial should not be granted was discharg-ed, and a judgment was entered on the verdict for the plaintiff.

Error was now assigned here in the charge of the Court in this:

1. That the Court did not answer the second and third points put by the defendant.

2. That the Court referred the construction of a paper to the jury, which it was the province of the Court to construe.

*Crawford* for the plaintiff in error.

There was no dispute as to the facts.  *Fry* lived seven miles from the farm in the actual possession of *Hiskey*, and *Hiskey* had every *indicia* of ownership of the property in question, which he could have; he contended, therefore, that the sale to *Fry* being unaccompanied by actual possession, which the policy of the law requires to accompany a sale of personal property, was void as against the execution creditors of *Hiskey*, who had a right, not-withstanding, to treat the property as his, and sell it to satisfy these executions.

*Fry* never had any actual possession.  If the note from *Fry* to *Stewart* would make him the tenant of *Stewart*, the latter had no power to make with him any agreement which could have that effect.  For *Stewart* had leased it to *Hiskey*, who was in posses-sion; and could not lease it to another.

The Court was asked to say, that the single bill of *Fry to Stew-art* and the agreement between *Fry* and *Hiskey* did not, in law, vest the possession in *Fry*.  That the former did not make *Fry* the tenant of *Stewart*, but was a mere security for the payment of the rent from *Hiskey* to *Stewart*.  The Court, however, did not answer these propositions, which they were bound to do.

But the construction of the paper was submitted to the jury.

1. Where facts exist *de hors* the paper, parol evidence as to these facts, and the paper itself may be referred to the jury; but this rule only applied, he contended, when the paper could not be

(Herron *v.* Fry.)

understood without a reference to extraneous facts. Here there was no ambiguity and no extraneous facts, which could affect its construction. The agreement was complete in itself, and the Court should have given it a construction.

2. The construction of the paper, and the answer of the Court should have been in favor of the defendant. The Court should have charged the jury, that this secret agreement, which sought to make *Hiskey* the tenant of *Fry*, would not vest the possession in *Fry*, or take away the imputation of fraud to the possession of *Hiskey*. To make the possession of the servant the possession of the master, so as to take it out of the salutary rule, which imputes fraud to a possession continued in the vendor, after a sale of personal property, that servant must be a stranger, not a party to the sale. If the vendor be, by the agreement, constituted a servant and the possession is continued in him after a sale; and this possession should be considered sufficient to vest the property in the vendee, so that it is not liable to the creditors of the vendor, then all the evils which the rule on this subject is calculated to avoid, would be sanctioned; for such an arrangement would always be made. He referred to the case of *Welsh* v. *Bekey*, executor of *Hayden*, 1 *Penn. Rep.* 57, and contended that the principle there established, was fully applicable to the case at bar.

*Dunlop* and *Chambers* for the defendant in error.

It is not pretended in the argument that there was any fraud in fact in the transaction under which the plaintiff claimed, but it is put on the ground of a fraud in law to postpone the plaintiff's title. There was evidence which went to establish a transfer of possession from the vendor to the plaintiff. *Hiskey* changed his character, and ceased to be a tenant, and became the servant of *Fry*, and his possession as such was the possession of *Fry*. But the question of possession, the continuance of that possession, and the character of it was for the jury, and upon this point the case was fully and fairly submitted to them.

As to the second point put by the defendant below, they contended the Court were not bound to answer it at all, as it blended law and fact together, assuming that *Hiskey* had remained in possession of the wheat sold. *Rouvert* v. *Patton*, 12 *Serg. & Rawle*, 253. But the Court substantially and correctly answered the points put, and it is enough if the point be substantially answered. *Fulweiler* v. *Bougher*, 15 *Serg. & Rawle*, 56. *Munderbach* v. *Lutz's administrator*, 14 *Serg. & Rawle*, 220. The Court told the jury that if *Hiskey* continued in possession, the defendant was entitled to their verdict, which was as favorable to the defendant as he had a right to ask.

(Herron *v.* Fry.)

Whether the transaction transferring personal property be fraud‑ulent or not, depends sometimes on the nature of the property. Here it was wheat growing in the ground, and incapable of actual delivery of possession. So far as possession could be delivered it was done. This was a proper question for the jury, and was rightly submitted to them.

The papers were ambiguous, and this ambiguity required parol evidence to explain it. The jury on this evidence have ascer‑tained the single bill to amount to a lease from *Stewart* to *Fry*. The Court could not say it was a mere security, for it required a reference to other evidence, which was connected with it, and went to establish the character of the transaction. When a con‑tract is wholly in writing, it is the office of the Court, and not the jury, to expound it. But when it is part written and part verbal, the whole may be left to the jury. *Irvine & Co.* v. *Kean,* 11 *Serg. & Rawle,* 280, 291. *Rouvert* v. *Patton,* 12 *Serg. & Rawle,* 253. *Davis' administrators* v. *Blaine's executors,* 12 *Serg. & Rawle,* 131.

The lease from *Stewart* to *Fry* was good, notwithstanding the lease to *Hiskey,* for *Hiskey* alone could object to it on this ground; and he was present and assented to it. Nor was it a secret agree‑ment, all the parties necessary to make it were present; the landlord, the tenant to surrender, and the person to make a new lease.

*Crawford* in reply:

The case of *Irvine* v. *Kean,* proves that when the contract is wholly in writing, it must be construed by the Court, and *Davis' administrators* v. *Blaine's executors,* that the Court is to give the construction of a written instrument, except where it cannot be understood without reference to facts *de hors* the writing. He contended that the contract of the 15th *March,* 1828, was wholly in writing, and could be perfectly understood without a reference to extraneous facts; and the Court erred in withhold‑ing the construction which was asked. The Court should have told the jury that there was no such thing as actual possession, that the possession of *Fry* was but a constructive possession, which is not enough   The Court erred in referring the inference from facts which were not disputed, to the jury, when the Court should have laid that inference down as the law which should gov‑ern the case.

There was no blending of law and fact in the defendant's se‑cond point. There was no dispute as to the fact which was as‑sumed in the point; and in such case a fact may be fairly assumed in the request to the Court to state the law to the jury as to that point. The writing of the 15th March, 1828, transferred no

(Herron *v.* Fry.)

possession of this grain to *Fry.* He claimed under the private sale of the 17th March, and this transaction was without that notoriety which the law, for the safety of the community, requires. There was no record, and no witnesses of the delivery of possession, such as it was.

The opinion of the Court was delivered by

HUSTON, J.—The cases of *Clow* v. *Woods,* in 5 *Serg. & Rawle,* 275, and of *Welsh* v. *Bekey,* executor of *Hayden,* 1 *Penn. Rep.* 57, have gone far to settle the law as to cases of sales, or mortgages of goods where possession is not delivered. The present is on the one side supposed to fall within these cases. Perhaps there is one marked difference—in each of those cases the possession was to remain in the mortgagor. In this it is alleged to have been at once transferred to the purchaser, and to have been ever after in him; and whether this was so, was the point of the cause—for I agree entirely with those cases. It was not contended here that there was actual fraud and collusion between *Fry* and *Hiskey,* though it was contended in the Common Pleas, evidence given to prove it, and the Court expressly left this to the jury. "If the whole was an arrangement to cover the property from the creditors of *Hiskey,* while it really and substantially belonged to *Hiskey,* it is wholly void;" is the commencement of the charge. But giving up this point in this Court, an error is charged on the Court below, that the Court left the construction of the note and agreement of the 15th of *March* to the jury. I do not understand the charge so, and I am satisfied it was not so intended—was not so in fact. The note alone, perhaps, would not decisively make *Fry* the tenant, nor discharge *Hiskey* from liability for the next year's rent; but the facts, that *Fry* had purchased all the horses and cattle and farming utensils of *Hishey* at a public sale by a constable, and the agreement between him and *Hiskey,* that with that stock and those utensils, *Hiskey* was to work the farm for the ensuing year for *Fry,* and to be paid a certain price per month, as a hireling, and that *Stewart,* the landlord, wrote this agreement and signed it as a witness, taken in connection with the note for the rent, given by *Fry* to *Stewart,* at the same time; would and did make *Fry* the tenant—and after this *Stewart* could not treat *Hiskey* as tenant, or resort to him for the rent—unless all this was done by *Fry* as a trustee for *Hiskey,* and to cover his property. On the face of the papers, and if all was fair, *Fry* was tenant, if not fair, *Hiskey* was tenant; and the possession of this grain after it was reaped and stacked on that farm was in *Fry* or in *Hiskey,* according as the transaction was *bona fide,* or collusive—and whether it was the one or the other was left to the jury.

(Herron *v.* Fry.)

The other error assigned is, that the two first points were not answered. If the cause be fairly put to the jury on the matters of fact and of law on which it turns, no more can be asked of a judge. These propositions assumed that the possession was always in *Hiskey*, and if so the law was with the defendant, and so the judge expressly charged; but he very properly went further and told them that if it were in *Fry* the plaintiff ought to recover.

If *Fry* had hired, not *Hiskey*, but another man to work that farm for him, there would have been no doubt; the possession would have been in him as much as if he had hauled the grain to another farm of his own. *Fry* would then have been indisputably tenant, and the possession of the farm his possession. *Hiskey* was sold out—poor—in debt—but it was no crime to employ him—to give him wages, and if in truth he was employed and paid by the month, *Fry* was as much in possession with *Hiskey* as a hireling, as he would have been if another man had been employed. The fact that he was *Fry's* brother-in-law might raise suspicion—the facts that he had been tenant of that farm the year before, and had owned the cattle and implements of husbandry, might raise suspicion—but it is not fraud or guilt in a man who wants a hireling, to employ a relation—it is only so when done collusively.

Whether then, the possession always remained in *Hiskey*, or was at once transferred to *Fry*, and was ever after in him, depended on whether he was really the *tenant*, and *Hiskey* really the hireling, and this was fairly left to the jury. Any question which raises on granting or refusing new trial is not subject of writ of error.

                                        Judgment affirmed.