### NELBRO FRAZIER v. HENRY FREDERICKS.

1. A transfer of personal property, which is valid by the law of the domicil of the owner or of the place where it is made, is sufficient to transfer the property, wherever situate, unless the transfer be against good morals, or against the law, or policy of the law of the country where the property is situate.

2. Although a transfer by mere act of the law of the owner's domicil, as the transfer by bankruptcy, will not transfer property in another state, yet a voluntary assignment for the payment of debts by the owner will operate upon property out of the jurisdiction of the law of the place of the domicil of the owner or of the place of the sale.

3. By the law of New Jersey, delivery is not necessary to complete the sale of personal property.

4. When, as by the law of Pennsylvania, delivery of personal property within thirty days is necessary to give validity to an assignment of it, if the property is seized by process of law within the thirty days, and taken from the assignee, the assignee may maintain an action for it, and that without making demand or claim for it within the thirty days.

5. In an action of replevin, when the defendant retains the property by making claim and giving bond according to the statute, upon a verdict for the plaintiff, the jury must include the value of the property as well as the damages for the taking and detention.

W. Aspinwall, of Philadelphia, made, on the 9th August, 1851, in Pennsylvania, a general assignment to the plaintiff

for the benefit of his creditors. On the 16th of August, 1851, the Camden and Philadelphia Ferry Company issued a writ of attachment out of the Circuit Court of the county of Camden against Aspinwall, as a nonresident debtor, under which the steamboat "B," lying at the company's wharf in the city of Camden, was attached. The boat was subsequently sold under an order of the court. The defendant, after notice that the property was in the assignee, purchased the vessel.

An action of replevin was brought by the assignee. The defendant, who retained the vessel, having given bond to the sheriff to return the same, if judgment should go against him, pleaded *non cepit* and *property in the defendant.*

A verdict was taken at the circuit for the plaintiff, subject to the opinion of the court upon a case stated.

*Dudley* and *Carpenter*, for the plaintiff.

The chief question in this case is, whether the assignment in Pennsylvania will carry the property in New Jersey, as against an attaching creditor.

Personal property is said to have no visible locality, that is to say, it is subject to the law which governs the person of the owner. Generally, a contract valid where made is valid every where. *Story's Conflict of Laws* § 380, 384. *Ld. Loughborough,* 1 *H. Bl.* 690.

The exceptions to the general rule are well stated by C. J. Ewing, in *Varnum* v. *Camp* (1 *Green* 330); but positive law or some strong rule of public policy must intervene to create any exception to the general rule.

So strongly is the general principle held in England, that a foreign bankrupt assignment *in invitum* has been held to carry property against the conflicting claims of creditors by attachment. 2 *Kent* 406; *Story's Conflict of Laws* § 403

This rule, though well settled in England, has not been adopted in this country. It has been here well settled, and upon sound principles, that involuntary transfers, by mere operation of law, under foreign bankrupt assignments, do not overcome the claims of a domestic creditor under our attachment laws. 2 *Kent* 406.

But there is a marked distinction between such statutory conveyance, which operates *in invitum*, and a voluntary conveyance. A voluntary conveyance *inter vivos* for the benefit of creditors comes properly under the general rule, and if valid where made must be held valid every where, unless brought under some of the recognised exceptions. A mere statutory conveyance relates strictly to place, depends entirely on local law, and therefore does not operate *extra territorium*.

The assignment in this case was made for the equal benefit of creditors, and is valid under the laws of Pennsylvania, where made. Our act only avoids assignments, where not made for the equal benefit of creditors. *Rev. Stat.* 316. The assignment does not conflict with any provision of our act. It is of no consequence that the assignee has not proceeded according to the provisions of our act. It is only necessary stric:ly to pursue those provisions in order that the debtor may obtain the benefit of a *statutory release* under it.

Independent of statute, it is lawful to prefer creditors. The statute goes no farther than abolish this rule, by declaring a general assignment void under which any preference is given.

An equal distribution is one of the highest considerations.

The cases in Massachusetts (collated by Story and Kent) do not conflict. *Story Confl.* § 416 ; 2 *Kent* 470 (*5th ed.*) and cases cited. *Speed* v. *May,* 5 *Harris.* 91 ; 6 *Ib.* 185 ; *Green* v. *Mowry,* 2 *Bailey* 163, are precisely in point.

It is of no importance that the assignee had not taken any actual possession of the vessel before the execution of the writ of attachment. Although in Pennsylvania it is held that a sale. unaccompanied by delivery is fraudulent as against creditors, yet the rule does not apply to an assignment for the benefit of creditors. *Fitler* v. *Maitland,* 5 *Watts & Serg.* 307.

The vessel not having been delivered to the plaintiff, the judge at the circuit should have permitted the jury to assess the *value* of the vessel as part of the damages. The bond required by the act (*Rev. Stat.* 117, § 17,) is merely a cumulative remedy. *Wilkinson on Replevin* 20 (*Law Lib. ed.*) ; 8 *Vin.* 333, *pl.* 5 and notes ; 3 *Barr.* (*Pa.*) *Rep.* 20, 21.

*Browning*, for defendant.

This was a voluntary assignment for the benefit of creditors, with no real consideration, made in Pennsylvania; the vessel was not at sea, but in New Jersey, in care of assignee's watchman  It was attached by the process of this state, and the plaintiff made no attempt to take possession, and only after notice at the auditor's sale, that the vessel had been assigned to him.

I. This assignment is void against an attaching creditor by the law of Pennsylvania.  It is a fraud, by the law of that state, for goods to remain in possession of vendor after sale. 5 *Serg. & Rawle* 275, *Clow* v. *Woods;* 2 *Watts & Serg.* 254, *Mitchell* v. *Willock;* 17 *Serg. & Rawle* 254; 10 *Ib.* 202 and 428; 14 *Ib.* 212; 6 *Watts* 459.

In this case no bill of sale, no change of enrolment no attempt to get possession, either within thirty days of sale or after.

II. This assignment is void by the law of New Jersey. *Rev. Stat.* 316, 317, § 1, 2, and 3.

1. It is not to pay all creditors in proportion to the amount of their debts.  1 *Green* 329, *Varnum* v. *Camp.*

2. There is no inventory or list of creditors, as required by statute.

3. No valuation or bond filed.

4. Creditors not required to verify claims by oath, which is part of the policy of the New Jersey statute.

III. Such assignments only operate on property within jurisdiction where made.  20 *Johns. R.* 264; 13 *Mass.* 147.

IV. Upon principles of the common law, where property is within the jurisdiction, delivery is essential to pass property. *Story's Confl. L.* 318, *n.* § 386; 17 *Mass.* 113; 12 *Ib.* 54; 1 *T. R.* 205; 5 *S. & R.* 275.

And although vessels out of state are not subject to the strict rules, yet they must be delivered at first opportunity; and this should have been left to the jury.  12 *Mass.* 54, *Lamb* v. *Durand;* *Abbot on Shipping,* p. 28 and 30; *Story's Con. Laws,* § 383, 384, 386, 389, 391, 392, 402, and 403 (*a*), 410, and 416, *notes.*

V. As to damages. By the express direction of the statute, the proceedings, which include the verdict and judgment, shall be the same after claim of property and bond as if no claim had been made. The damages, therefore, cannot include the value of the chattel, but must be only for the taking.

The CHIEF JUSTICE delivered the opinion of the court.

The general principle is fully and unequivocally settled, that personal property is transferable according to the law of the country where the owner is domiciled. A transfer of personal property, therefore, good by the law of the owner's domicil, or by the law of the place where it is made, is valid wherever the property may be situate. *Story on Conf. of Laws*, § 383, 384; 2 *Kent's Com.* 454; *Varnum* v. *Camp*, 1 *Green* 329.

The general principle is not universally true, but is subject to several exceptions. The necessary intercourse of mankind requires, to use the language of Chancellor Kent, that the acts of parties, valid where made, should be recognised in other countries, provided they be not contrary to good morals nor *repugnant to the policy and positive institutions of the state.* 2 *Kent's Com.* 455.

The principle applies to a voluntary conveyance of property by the owner, not to a conveyance by operation of law. An assignment by law has no legal operation out of the territory of the law maker. Such, at least, is conceded to be the decided weight of American authority. *Milne* v. *Morton*, 6 *Binney* 361; *Blake* v. *Williams*, 6 *Pick.* 307; *Holmes* v. *Remsen*, 20 *J. R.* 266; *Story on Conf.* § 410; 2 *Kent's Com.* 406.

The assignment under which the plaintiff claims is not an involuntary legal conveyance, or statutory transfer of property, made in case of bankruptcy or insolvency. It is a voluntary assignment, made by a debtor residing in Pennsylvania, for the benefit of his creditors. Such an assignment all the authorities (even those which most strenuously deny the operation of a statutory transfer upon extra-territorial property) concur in holding valid and effectual to vest extra-territorial property in the assignee, as against a subsequent attaching

creditor of the state where the property is situate. " I do not mean," said Justice Platt, while denying the prior right of an assignee under the English bankrupt act over an attaching creditor in the state of New York, " to suggest a doubt that, independent of the statutory transfer, a *bona fide* assignment for valuable consideration, or for payment of debts, fully made by such foreign creditor himself, would be valid against a subsequent attachment here." *Holmes* v. *Remsen*, 20 *J. R.* 260.

And Chief Justice Tilghman, while maintaining the same views against the efficacy of an involuntary assignment under the bankrupt law, said, " We have no laws prohibiting foreigners from a free disposal of their personal property situate here; therefore, if Topham (the bankrupt) had made an assignment of his property in the hands of the garnishee, the case would not have admitted of a moment's speculation." *Milne* v. *Morton*, 6 *Binney* 361.

And the Supreme Court of Massachusetts distinguish, in like manner, between a statutory and a voluntary transfer for the benefit of creditors, even where preferences are given to particular creditors. The latter, they say, would be consistent with our laws and our practice. Admitting their validity is merely acknowledging the personal right of the proprietor to dispose of his effects for honest purposes. *Blake* v. *Williams*, 6 *Pick.* 314. See *Green* v. *Mowry*, 2 *Bailey* 163; *Speed* v. *May*, 5 *Har.* 93; 6 *Ib.* 185.

A voluntary assignment, made by a debtor for the benefit of his creditor, would seem, upon principle, to stand upon the same ground, so far as the present inquiry is concerned, with any other transfer of personal property by the owner. If, then, a sale by the owner of property lying in a foreign state be effectual for the absolute transfer of the property to the vendee, an assignment of the same property for the benefit of creditors must be equally valid and effectual.

Admitting the assignment to be valid by the laws of Pennsylvania, where the assignment was executed, there is nothing in its terms repugnant to the provisions of our statutes or to the policy of our laws. The terms of the trust are, that the trustee shall convert the property assigned, as speedily as may be,

into cash, and, as the proceeds are from time to time realized, to pay all the creditors of the assignor their respective demands, indiscriminately and without preference. It is said that there is no provision in the trust for the payment of the creditors in the ratio of their respective claims, and that the assignee may, at his discretion, pay one creditor in preference to another. But this construction is plainly inadmissible, and is in fact in direct conflict with the express terms of the trust, which requires that the trustee shall pay all the creditors their respective demands indiscriminately and without preference. The terms of the trust are in fact in strict accordance with the provisions of our statute, which forbids all preferences of one creditor over another. It may be added, moreover, that it is in accordance with the dictates of justice and with sound morality. The case, therefore, does not fall within the objection which prevailed in *Varnum* v. *Camp*, being that the contract was in violation of a statute of this state, and in contravention of its obvious policy. If the contract was valid and effectual for the transfer of the property of the assignor in Pennsylvania, it is, upon the principles already stated, equally effectual for the transfer of his property in this state.

Independent of any peculiar provision of the laws of Pennsylvania, the assignment is clearly a valid contract at common law, made for a lawful purpose and upon a valuable consideration. It is proven moreover, upon the trial, that the assignment is valid by the laws of Pennsylvania. It is in no wise material that the assignment was not recorded in this state, or that the particular directions prescribed by our statute have not been pursued, unless, indeed, the broad ground be assumed, that no assignment for the benefit of creditors made in another state can prevail in this state against the claim of an attaching creditor. But no such objection is adverted to in *Varnum* v. *Camp*. That case, indeed, proceeds upon the ground, that the assignment made in New York, if not made in contravention of law, would have been effectual to transfer the property in this state.

It is objected that the assignment cannot operate as a valid transfer of the vessel, because there was no delivery of the

property to the vendee. The assignment bears date on the 9th of August, 1851. The trust was accepted, and the deed recorded on the 11th of August. At the date of the assignment, the vessel in question was lying at the wharf in Camden, and so continued until the 16th of August, when it was attached by the sheriff, at the suit of a New Jersey creditor, as the property of the assignor, being then in charge of his watchman. The boat was sold by the auditors in attachment, under an order of the court, on the 15th of October, and purchased by the defendant in this suit, no possession having in the mean time been taken, or attempted to be taken, of the vessel by the plaintiff.

By the common law, as understood in England and in this state, delivery is not necessary upon a sale of a chattel to vest the title in the vendee. A bargain and sale without delivery, by the English law, transfers the legal property in goods; and although they be subsequently sold to a second purchaser, or seized by the vendor's creditors, the vested property of the first purchaser, in the absence of fraud, will prevail. *Blackburn on Sale* 187–8; *Chit. on Con.* (5th Am. ed.) 274; *Lanfear* v. *Sumner*, 17 *Mass.* 115, note 9.

I am aware that a more stringent rule, perhaps a safer one, has been adopted in many of the states, including Pennsylvania, *viz.* that a sale of chattels unaccompanied by delivery is fraudulent and void, as against *bona fide* purchasers and creditors of the vendor. 5 *Serg. & Rawle* 275; 10 *Ib.* 202; 17 *Ib.* 251.

But in *Mitchell* v. *Willock*, 2 *Watts & Serg.* 253, the Supreme Court of Pennsylvania held that this principle does not apply to a voluntary assignment for the benefit of creditors; that, by the statute of that state, the assignee is allowed thirty days, within which he is to file an inventory of the estate assigned, to file an appraisement and to give security, and that in the mean time the property passes so as to exempt it from execution. In such case it is not necessary that actual possession be taken by the assignee, the goods being suffered to remain in the possession of the assignor, who, for the purposes of the trust, is the agent of the assignee. The possession of

the goods by the assignor is in such case consistent with the deed and with the object and intention of the assignment. Under this decision, which is clearly in accordance with the rule adopted in this state and with sound principles, the vessel in question passed by the assignment, so as to be exempt from execution, although no actual delivery was made. Within five days after the assignment, the goods were attached and taken into the custody of the sheriff. At the time of the service of the attachment, the vessel was not subject to seizure at the suit of the creditors of the assignor, the property having passed by the assignment. It is objected that there is no evidence that the plaintiff made demand of the sheriff, or attempted to take possession of the goods, at any time within thirty days. But the material inquiry is whether, at the time of serving the writ, the property was liable to be seized as the property of the defendant in attachment; and if it was not his property, as it clearly was not, the service of the attachment was illegal, and, being illegal, it could not be rendered valid and effectual by the owner of the property failing subsequently to demand the possession.

At the common law, where the plaintiff in replevin complains that the defendant still detains the goods, if the plaintiff recover, he shall have judgment in damages as well for the value of the goods, as for taking and detaining them. *Fitzh. N. B.* 69 *L; Gilbert on Rep.* 160 ; *Wilkinson on Rep.* 20, 90 ; *Morris on Rep.* 24, 139, 142 ; 6 *Vin. Ab.* 333, *Costs* (*a*) 5 ; *Easton* v. *Worthington,* 5 *Serg. & R.* 131 ; *Moore* v. *Shank,* 3 *Barr.* 20.

The remedy by replevin is coëxtensive with trespass, the only difference being that in replevin, where the plaintiff recovers the specified chattel, he has damages for the taking only. Where the chattel is not returned damages must cover the value of the thing, as well as the injury done by taking it. *Bruen* v. *Ogden,* 6 *Halst.* 370.

Where the defendant claimed property in the goods sought to be replevied, that question must, at the common law, have been tried and decided before the sheriff could proceed to execute the writ of replevin. The statute (*Rev. Laws* 117 § 7,

Durar v. Insurance Co.

8,) was designed to remove that difficulty by leaving the property in the hands of the defendant, upon his giving the security for its forthcoming, and directing the suit to proceed as if the claim had not been made. The provision of the eighth section is, that the suit shall be proceeded in and determined in the same manner, in all respects, as if the claim of property had not been made. It does not require nor can its meaning be that the same judgment shall be rendered as if the property had been restored to the plaintiff. The bond for the return of the property was designed as a security, and affords a cumulative remedy. There is nothing in the statute to give countenance to the idea that the legislature designed to turn the plaintiff round to a new action by depriving him of his common law remedy. This view of the effect and operation of the bond has been taken by the courts of other states. *Morris on Rep.* 142.

Upon the case stated, the plaintiff is entitled to judgment. The judgment should be entered in damages, as well for the value of the goods as for the taking, with costs.