The opinion of the court was delivered by
Gibson, J.
In actions of ejectment, the practice of receiving the probate of a will as prima facie evidence, has obtained in this state, time out of mind; and has beside received the sanction of this court in Logan v. Watts, 5 Serg. & Rawle, 212.
The defendant, having read the supposed will, offered in evidence the deposition of William Reichenback, a devisee under whom he claims. The deed from the witness, contains no covenant of general warranty; but the deposition was objected to because, as was alleged, the witness being too poor to carry on the suit, had conveyed to his son with an understanding that the property should still belong to him. Taking this to be true, it is clear it went to the credibility of the witness and not to his competency. -
To prove that the will was obtained by fraud and undue influence, the plaintiffs gave in evidence the record of an ejectment between the same parties; and to show that the validity of the will *90 was passed upon by the former jury, offered in evidence what we inaccurately call a privy verdict; which was rejected. A privy verdict is that which, for the sake of being released ftom confinement, is given by a jury out of court to a judge; but if the court be adjourned to the judge’s chamber, it is not privy but public. With us a practice equally safe and convenient has obtained, of permitting the jury to reduce their finding to writing, and after sealing it Up, to separate till the meeting of the court; when the paper being handed to the judge, their verdict is received from the lips of the foreman, and recorded in the usual way. But this difference is unimportant; for neither in the one case or the other, is a privy verdiet thus delivered, recorded. As the jury may depart from it, their finding in court is what decides the rights of the parties, and what is admitted of record. The paper delivered to the judge having performed its office, is never filed or preserved; and if it even should be, it would form no part of the record. The verdict in open court by the proper officer, was therefore the only competent evidence of what the jury directly found: what they passed upon might be proved by the jurors themselves ; and the plaintiff had the full benefit, of that under the court’s decision.
The plaintiffs propounded several points to the judge, founded oil a statement of facts supposed to have been proved, such as the principal devisee being the step-father and guardian of the testator, and having been as an inmate in his family; an enfeebled state of the testator’s intellects from intemperance, the will being written by the step-father, declarations of the testator that he had no peace at home till he consented to make it, and a variety of other circumstances; and then prayed the court to direct the jury that if they were of opinion those facts were true, they should find for theplaintiffs. The judge was of opinion that the facts stated were evidence of fraud, but not conclusive; and that the questions proposed were so mixed of fact and law as to render it improper to give a positive direction with resped to them. From this I in one particular dissent: these points presented questions purely of fact, and were for the exclusive consideration of the jury. There undoubtedly are cases where fraud arises by implication of law', from specific facts; such as retention of possession after the execution of an absolute bill of sale of chattels; and there the court is to judge: but here the question was not whether one or more .circumstances should be deemed fraudulent per se, on the score of public policy, but whether there was actual fraud and imposition practised on a weak man; which was evidently a matter exclusively for the jury.
Then as to the exception to the charge: The judge filed the whole charge, pursuant to the act of assembly: and the error is assigned in the following extract from it: “ Mere weakness of the mental faculty is not itself sufficient to incapacitate, but there must be the absence of intellect or understanding. Sickness and fevers impair the mind to a certain degree, yet there may be enough left for *91 the purposes of a will: all that is necessary is that a disposing mind and memory remain. Mere weakness of understanding, or a harassed and uneasy state of mind, unless such harassed or embarrased state of mind amount to a positive derangement of intellect, (which requires a minute and difficult inquiry,) does not furnish a substantive objection to the validity of a will.” It is not pretended that a harassed or uneasy state of mind,-unless the exciting cause has driven reason at least partially from her seat, is sufficient of itself to avoid a will: but this part of the charge is excepted to, because there may be, it is said, a degree of imbecility short of ideocy, which may nevertheless incapacitate. Iam not going positively to say whether this be so or not; or.if it be, to attempt to draw the line between capacity and incapacity. Such attempts have been made; and'have ended where they began, in just saying that the testator must have a sound disposing mind and memory: as in Winchester’s Case, 6 Co. 23., where it is said that “ by law it is not sufficient that the testator be of memory, when he makes his will, to ahswer usual and familiar questions, but he ought to have a disposing memory, so that he is able to make a disposition of his lands with understanding and reason; and that is such a memory as the law calls sane and perfect memory. ” This definition isjust about as certain and satisfactory as any I have met with, or perhaps as the subject is susceptible of. It is certainly better than that given in Combe’s Case, Moore’s Rep. 759, where it is said: “ Sane memory for the making of a will is not at all times where the party can speak yea or no, or had life in him; nor where he can answer any thing with sense: but he ought to have judgment to discern and be of perfect memory,” otherwise the will is void. Now we should be here on sharp points indeed, if we were to reverse for a supposed want of precision or accuracy of definition, where the thing is, from its nature, in a great degree incapable of being defined. But let us see whether it is altogether certain that mere imbecility short of ideocy, is sufficient to avoid a will. Swienburne, whose book is perhaps still the best we have on the subject, says (Part 2. §4.) “ If a man be of mean understanding, neither wise nor foolish, but indifferent as it were between a wise man and a fool, yea though he. rather incline to the foolish sort, go that for his dull capacity he may be termed grossum caput, a dunce,,such a one is not prohibited to make a testament: unless he be yet more foolish and so very simple and sottish that he may easily be made to believe things' incredible or impossible; as that an ass can fly, or that trees did walk, beasts and birds could speak, as it is in JEsop’s fables.” ■ Now such a person would undoubtedly be pronounced an ideot. But it is said the judge went further and said that any thing less than a total absence of intellect would be sufficient to sustain the will. It is certain that a mere glimmering of reason is not enough. But the part of the charge in which the error is assigned is near (he conclusion, and where the judge was recapitulating the principles he had *92 before more at large laid down. If we were to decide on detached sentences without a consideration of the whole, we should render the operation of the act requiring a judge to file his charge of record, more oppressive to suitors, and obstructive of the speedy and fair administration of justice, than it has yet been found. This part must therefore be taken in connexion with what was said before; and we find that the judge in the outset laid down certain principles in which it was clearly expressed, that a slight degree of understanding is sufficient for the purpose of making a will; but not where the mind is so dark and obscured, either by nature or from accidental causes, as to fall within that description which the law gives, of persons mentally incapable:” and again, that “ mere weakness of mind does not incapacitate where there is no fraud or imposition, if it be not so feeble as to become what the law calls mental incapacity.” Now fpebleness of mind is very different from the absence of every thing like mind: and the language here used is inconsistent with the supposition that the necessity of a total annihilation of the testator’s intellects was intended to be inculcated. Taking therefore all the parts of the charge together, it is evident the judge meant to say and the jury understood, that mere feebleness of intellect short of what might by many, be supposed to amount to ideocy, is insufficient to render a will void; and in this I cannot say there is error,
Judgment affirmed.