Wharton.
2wh302
137  228

[PHILADELPHIA, FEBRUARY 18th, 1837.]

## STREEPER *against* ECKART and Another.

### IN ERROR.

1. A sale and transfer of personal property, made for the purpose of preventing a creditor from obtaining execution of his judgment, is *mala fide*, and void against such creditor.

2. A party claiming against such creditor is bound to remove all doubt of the fairness of the transaction, even if possession has acco.npanied the transfer.

3. A transfer of personal property unaccompanied by a corresponding change of possession, is void as against creditors.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remové the record of an action of trespass *vi et armis, de bonis asportatis*, &c. brought by John Streeper against 〈 hristian Eckart and W. B. Freeston.

The circumstances, which led to the action, were as follows :—

On the 17th of August 1832, Christian Eckart obtained a judgment before a magistrate against one Thomas Jefferies for the sum of $70 55.   On the 30th of August following, Thomas Jefferies executed a bill of sale to John Streeper of three horses and five carts for the price or sum of $375. An execution issued in the suit of *Eckart v. Jefferies* on the 11th of September, and was levied on the horses and carts which were then in the possession of Jefferies.   Streeper, the alleged vendee, gave notice to the constable on the 25th of September, that the horses and carts belonged to him ; and that they would be claimed from any person who might be possessed of them.   The constable nevertheless proceeded to sell them ; and Streeper brought this action against him and Eckart to recover damages for the taking.

On the trial before PETTIT, President, the plaintiff proved the bill of sale, and an article of agreement entered into between him and Jefferies on the 31st of August 1832, as follows :

" Article of agreement, made and concluded between John Streeper and Thomas Jefferies, of the Northern Liberties, (carter,) —To wit : the said John Streeper agrees to let to the said Thomas his three horses, two of which are bays and one a spotted horse.

Being the same three horses which the said John Streeper bought of the said Thomas on the 30th inst. Likewise, five carts, on shares. That is, the said Thomas is to have the use of the said horses and carts to work with; and the said John is to find feed for the horses sufficient, and keep the carts in repair; and to receive the one-half of what the said Thomas may earn by the use of the said horses and carts. And he, the said Thomas, is to keep them in profitable employ. If not, the said John is at liberty to take them, and deprive the said Thomas of the use of all, or either. Witness their hands, August 31st, 1832."

The plaintiff also examined several witnesses to prove, that Jefferies was indebted to him prior to the 30th of August 1832, and had agreed to transfer the horses and carts to him in consideration thereof; and that the horses and carts were actually his property, and merely hired to Jefferies.

The defendant's counsel produced the judgment and execution against Jefferies, under which the property was sold.

The learned Judge charged the jury as follows:—

" Pettit, Pres't.—The amount of property in question in this case, is not large; but the principles involved are of some importance. Christian Eckart, the defendant, is charged in this action of trespass with having illegally taken certain horses and carts, claimed as belonging to John Streeper, the plaintiff. It is not disputed that the property was taken on an execution, out of the hands of one Jefferies. Eckart's case is substantially this. He obtained a judgment against Jefferies, before a justice of the peace, on the 17th of August 1832, when Jefferies was the undisputed owner and possessor of the property, which became the subject of dispute. Execution was issued on the 11th of September 1832, and this property was found in the actual possession of Jefferies, and levied on. Streeper says that between the date of the judgment, and the day of the levy, he took possession of the property as a purchaser, and hired it again to Jefferies; and he asserts, that in this he did what was lawful. Now, here the plaintiff is met by a principle of law, viz.: that after a judgment has been obtained, a transfer by the defendant, of his goods and chattels, is looked upon as wearing a deep complexion of fraud, and as subjecting to a very jealous examination the conduct of both alienor and alienee; and that even where there is a full consideration, if the possession remain with the debtor, the act is void, as against creditors. 10 *Serg. & Rawle*, 424. A party claiming against the creditors, would be bound to remove all doubt of the fairness of the transaction, even if possession accompanied the transfer. With this preliminary caution, of which the defendant has the advantage, the jury will look at the plaintiff's case; for if

(Streeper *v.* Eckart.)

it is not shown that he was a creditor of Jefferies's, there is an end of the controversy. The plaintiff alleges, that he was a creditor; the defendant denies it; and the point is for the jury, as a question of fact.

(The Judge here repeated some of the testimony, and noticed some of the arguments; and under the above remarks, left the question of fact for the decision of the jury.)

But suppose the jury are satisfied that Streeper was a creditor of Jefferies, then the question presents itself: was there such a transfer of property as the law will sustain? As a general proposition, it is certainly competent to a debtor to make a *bona fide* sale of personal property, notwithstanding there is a judgment against him. As a general proposition, it is equally true that horses and carts may be lawfully hired out by the owner of them, to another person. The effort here, I understand to be, by a combination of these two principles, each true by itself, to control and defeat, or rather to escape from the effect of another general proposition, which must be admitted to be true, to wit: that possession must accompany the transfer of personal property, or it is void against creditors.

This brings us to the inquiry, what kind of possession does the law require? The answer is, that the possession must be absolute and exclusive. There must be nothing colourable about it. I refer of course to property capable of delivery, as this was. So far as the alienor is concerned, the possession must be substantial and continuing in its character. No device or contrivance which the wit of man could suggest, short of an open and unequivocal possession, would be allowed to defeat the rule of law.

The putting a third person in charge with the alienor, is but a concurrent possession, and would be inoperative. The taking possession of horses and carts for a single night, followed by a restoration of them in the morning, on an alleged contract of hiring, when the design that they should be restored, existed at the time of the taking possession, would be a device in fraud of the law, and would not be permitted to prevail. Where the object of the whole arrangement is a mere security on the goods, and the former owner is allowed to retain them, or after a formal and temporary possession, intended so to be, is suffered to obtain them again with all the visible marks of ownership, the arrangement is void as against creditors. Any mere temporary possession taken with a view of evading the rule of law relative to unequivocal possession, but which is followed by placing the party and the property visibly in the face of the world, just where they were before the alleged transfer, would be fraudulent. In thus stating the law, I do but carry out the principles of the decisions of the Supreme Court. If the rule which those decisions have recognised, not as new, but as old and previously well established law, could be so readily eluded, they would

(Streeper *v.* Eckart.)

have been pronounced to but little purpose.   The rule certainly has vigour enough for self-protection.

Then what is the case here ?   Mrs. Jefferies and Mr. Shaw both say, that the object was to secure Mr. Streeper.   Mr. Shaw suggested the sale of the 30th of August, the delivery of temporary possession, and the return of the property under a contract of hiring as manifested by the paper dated the 31st of August.   The plaintiff's counsel have fairly met this point, and treated the two papers of the 30th and 31st of August, as having been executed in pursuance of an original purpose existing before the date of the first of them. If Streeper took the articles on the 30th of August with an understanding existing at the moment, that he was to restore them the next day on a contract of hiring; and Jefferies the next day accordingly re-took them into his own use and possession, the transaction was fraudulent in law, and void as against Eckart's execution.

Another point was suggested by the defendant's counsel, namely, that Eckart was not liable in this suit, even supposing Streeper to have a legal claim upon the property.   The case is free from legal difficulty on this head.   If Eckart knew of the levy, and after receiving notice of Streeper's claim, approved of the proceedings of the constable; if he attended at and gave his sanction to the sale under his own execution, he is liable for the trespass, if any was committed."

The plaintiff's counsel excepted to the charge; and the jury having found for the defendants, he took a writ of error from this court.

The following specifications were filed:—

1st. "The judge erred in charging the jury that a conveyance by an individual of his goods and chattels after a judgment is obtained against him, wears a deep complexion of fraud, and that even where there is a full consideration, if the possession remain with the debtor, the act is void against creditors.

2d.  The judge erred in charging the jury that there was not such a transfer of property as the law will sustain; because the possession of personal property must be exclusive and continuing in the person to whom it is transferred.

3d.  The judge erred in not charging the jury that inasmuch as horses and carts and so forth are the subject of ordinary hiring, that suffering the alienor to take possession of them after a transfer for a full consideration to be used for the benefit of the alienee.   That the alienee has such a property in them as will enable him to maintain an action against any person who may take them.

4th.  The judge erred in not charging the jury, that from the evidence there was a full consideration paid for the horses and carts,

(Streeper *v.* Eckart.)

and possession taken of them under a *bona fide* sale; and that the plaintiff was entitled to a verdict.

5th. The judge erred in charging the jury, that a party claiming against the creditors would be bound to remove all doubt of the fairness of the transaction, even if possession accompanied the transfer.

6th. The judge erred in charging, that "the taking possession of horses and carts for a single night, followed by a restoration of them in the morning, on an alleged contract of hiring, when the design that they should be restored, existed at the time of the taking possession, would be a device in fraud of the law, and would not be permitted to prevail.

7th. The judge erred in charging, that "if Streeper, the plaintiff, took these articles on the 30th of August with an understanding existing at the moment, that he was to restore them the next day on a contract of hiring, and Jefferies the next day accordingly re-took them into his own use and possession, the transaction was fraudulent in law, and void against Eckart's execution."

The case was submitted without argument.

KENNEDY, J. delivered the opinion of the Court, as follows :—

Several errors have been assigned, consisting of exceptions to the charge delivered by the District Court to the jury; but it is considered unnecessary to notice them in detail, as we are of opinion that the charge is perfectly unexceptionable throughout. It is not only in accordance with the principles laid down and resolved in *Twyne's Case,* (3 *Co.* 80,) which may be considered the leading one in relation to covinous transfers of property, made by debtors, to hinder, delay or defraud their creditors, but is supported by a train of decisions made by this court, which, it appears to me, ought to leave no doubt upon the mind of any one, as to what the law is in this state, on this subject. See *Wilt* v. *Franklin,* (1 *Binn.* 521.) *Dawes* v. *Cope,* (4 *Binn.* 258.) *Wager* v. *Miller,* (4 *Serg. & Rawle,* 123.) *Clow* v. *Woods,* (5 *Serg. & Rawle,* 278.) *Cunningham* v. *Neville,* (10 *Serg. & Rawle,* 201.) *Babb* v. *Clemson,* (*Id.* 419.) *Martin* v. *Mathiot,* (14 *Serg. & Rawle,* 214.) If there be any principle established by these cases, it is, that a transfer of personal property, unaccompanied by a corresponding transmutation of the possession, is void as against creditors. This is a general rule, clearly settled by them, which cannot be dispensed with, where it is practicable to make the change. The reason of the rule is, that the possession of personal property is *prima facie* evidence of ownership; and the person, therefore, who has once become the owner of such property, and obtained the possession of it, may well be con-

sidered by every one the real owner, as long as he shall remain in the actual possession, and continue to exercise daily acts of ownership over it. He thereby necessarily acquires a credit on account of it, which, from the very nature of things, must continue to be the case while he retains the possession, and continues to use it. Under such appearances of ownership, every man is justified in regarding him as still being the owner; and in giving him credit, or having become his creditor, in extending indulgence to him on account of it. This being the case, it is obvious that the purchaser of property, who leaves the seller in the possession and use of it afterwards, as before, thereby gives the latter a deceptive credit in the world, which would operate very unjustly, if he were permitted under such circumstances, to withdraw the property from the creditors of the seller, when it becomes the only means of paying their claims, and may fairly be supposed to have influenced them in giving the seller credit, or otherwise indulgence, or possibly both. To prevent every one, therefore, from being deceived by the appearance of ownership, when it has ceased after having once existed, the party to whom the right of ownership has been transferred, if he wishes to make himself secure against the creditors of his vendor, must take the property into his exclusive possession, so that the change of possession, which is an index of the transfer of the right of property, may be visible, and by this means become known to all whom it may concern. Seeing then this is the object of the law, in requiring that a change of the possession shall accompany a transfer of the right of property, how is it possible that a change, merely for a single night or day, can answer the purpose, and advertise the public of the change of ownership in the property. It is perfectly manifest, that it can have no such effect, and therefore cannot be regarded as meeting the requisition of the law in this respect. A sale made, however, by a sheriff, of property taken in execution, forms an exception to the general rule on this subject; or not being a sale by the act of the owner himself, but by operation of law, it may, perhaps, more properly be said not to come within the rule. It is made under the authority of judicial process by a sworn officer of the law, and upon public notice thereof previously given; so that it is presumed to be fair, and free from fraud, until the contrary is made to appear; and if fair, every one is bound to take notice of it. The vendee, therefore, of the sheriff, in such case, may bail the goods or property to the defendant named in the execution, as a loan, or otherwise, as he pleases, without rendering it liable to be taken in execution again for the debts of the same defendant. See *Myers* v. *Harvey,* (2 *Penn. Rep.* 481.)

But suppose that Streeper, in this case, upon the property's being transferred to him by Jefferies, for a full consideration paid, had taken it into his own exclusive possession, and kept it; the circumstance of its having been done but a few days after Eckart, one of

the defendants here, had obtained a judgment against Jefferies; and when it was no doubt expected that an execution would be sued out thereon shortly, was certainly calculated to awake suspicion, if not strongly indicative of the transfer having been made collusively, and with a fraudulent intent, and therefore not *bona fide*. In *Twyne's case*, it was resolved to be a mark of fraud, and is so laid down by this court in *Babb* v. *Clemson*, (10 *Serg. & Rawle*, 424,) as also in other cases. And according to the statute of 13 Eliz. the transfer must not only be made on a valuable consideration, but likewise *bona fide*; and hence, if the sale and transfer of the property were made between the parties, with intent to defeat Eckart in obtaining execution of his judgment, it was *mala fide* and void as against him.

That this case, judging from the evidence, was beset with pretty strong indications of fraud *in fact* is very apparent; and it would, therefore, have been the very height of error in his Honour, the Judge of the District Court, to have charged the jury as the plaintiff's counsel required, to wit, "that from the evidence, there was a full consideration paid for the horses and carts, and possession taken of them under a *bona fide* sale; and that the plaintiff was entitled to a verdict." But there was certainly great propriety, as well as strong reason for his instructing the jury as he did, that "a party claiming against the creditors, would be bound to remove all doubt of the fairness of the transaction, even if possession had accompanied the transfer."

Being perfectly satisfied with the instruction of the court to the jury, we therefore affirm the judgment.

Judgment affirmed.

Mr. *Arundel* and Mr. *Meredith* were for the plaintiff in error;

Mr. *Jack* and Mr. *Cohen* for the defendants in error.