## Young *against* M'Clure.

Watts & S,
2ws147
137   228

To constitute a valid assignment of personal property against a judgment creditor, there must be a delivery to, accompanied and followed by a continuing possession in the assignee; and where property levied upon in the hands of A, and sold under an execution against him, is claimed by B under a previous transfer, it is incumbent on B in a suit by him against the officer making the execution to prove that possession accompanied and followed the alleged transfer.

Where the possession does not follow as well as accompany a transfer, it is a fraud in law, without regard to the intent of the parties, and becomes a question for the court, and not for the jury.

ERROR to the Common Pleas of *Mercer* county.

This was an action of trespass *de bonis asportatis* before a justice of the peace, by John M'Clure against John T. Young, to recover damages for taking and selling a yoke of oxen, the property of the plaintiff. An appeal was taken to the court below.

The plaintiff proved by Robert Pettigrew that in January 1840, he was in Clarksville, and had with him his yoke of cattle; that he sold them to the plaintiff for $45, for which sum the plaintiff gave him credit on his books; and that he delivered the cattle to the plaintiff. About an hour after the purchase and delivery, the plaintiff agreed to let witness use them, if he took good care of them, until he would sell them. He (Pettigrew) took them to the shop and had them shod. Eight or ten days after this, Young levied on them for a debt which witness owed Guthries. Witness told him the oxen were M'Clure's. He owed M'Clure sixty or seventy dollars, that he had given M'Clure his note for before

[Young v. M'Clure.]

he sold him the oxen—knew that Guthries had a judgment against him, but did not know that they were going to issue execution against him—owed them ten or fifteen dollars—had a cow, eight, ten, or a dozen sheep, and some hogs.

S. Hall stated that he heard Pettigrew tell M'Clure that he had a yoke of cattle that he would sell M'Clure; and Pettigrew went out of the store, and when they returned, M'Clure told witness to give him a credit for $45, which he did. Pettigrew asked M'Clure what he would do with the cattle. Said he did not know. Pettigrew said he had some coal to haul to Greenville. M'Clure said he might have them to haul the coal. Young came into the store, and inquired if M'Clure had bought the oxen. Showed him the credit for the price of them.

Mr Leech stated that he told Young that M'Clure owned the cattle, and that he had better not levy on them; that M'Clure had offered to sell them to him. The oxen were worth $45 or $50. Young admitted that he had notice, and had seen the credit on M'Clure's book, but that Guthries had indemnified him.

The defendant gave in evidence a transcript of a judgment rendered by a justice of the peace, T. & W. Guthrie v. R. Pettigrew, for $38.69. Execution issued February 7th 1840. Returned levied on one yoke of oxen, sold to William Guthrie for $30.

William Fruit, Esq., stated that he was present at the trial before Esq. Leech, but does not recollect what Pettigrew did say. Pettigrew offered to sell him the oxen. The first that he heard of the sale to M'Clure was the day that the cattle were brought to Clarksville. The oxen had been got from him, and had not been paid for then. $45 would be a good price for them. Hall said M'Clure had no further claim than for the price of the oxen.

Isaac Hazen stated, that he did not recollect whether Pettigrew was examined as a witness. Thinks he was sworn to make true answers. Said he had sold the oxen, and delivered them to M'Clure. Hall said it was not the cattle M'Clure wanted, but the price of them.

Henry Clarke stated that M'Clure said he had bought the cattle of Pettigrew — had taken them to pay his debt, so that no other person could get them.

Several witnesses were examined as to the general character of Pettigrew for truth and veracity, and the amount of their testimony, with the exception of Marmaduke Rambo, who stated his character was not good, was, that he was not entitled to as much credit as others.

On the part of the plaintiff, Mr Leech was again called, and stated that Pettigrew was not examined as a witness on the trial before him. Hall's testimony is the same in substance that it was on the trial before witness—nothing particular against the character of Pettigrew, and that he would believe him on oath.

The amount of damages was left a blank in the declaration.

[*Young v. M'Clure.*]

The court below charged the jury as follows, viz. :

" The defendant contends, that in all cases where there is a sale accompanied by a delivery of the property, if the purchaser afterwards suffers the property to get into the possession of the seller, the transaction is a fraud in itself—a fraud *per se*. In all cases where property is purchased and paid for, but not delivered to the purchaser, no right to the property vests in the purchaser, and property thus circumstanced could be levied on and sold as the property of the seller, and no suit could be maintained against the officer for levying and selling it. Where there is a fair and *bonâ fide* sale of the property, and the price paid by the purchaser to the seller, and the property delivered to the purchaser, if he, after the delivery, loans the property to the person from whom he purchased, or gives him the possession of it for a particular purpose, the transaction is not a fraud in itself—not a fraud *per se*, more than if he had loaned it to another person, or given the possession for a particular purpose to another person. Do you believe from the evidence that there was a fair, honest, and *bonâ fide* sale of the oxen by Pettigrew to M'Clure, and that the oxen were delivered to M'Clure, and that they were loaned to Pettigrew to haul coal to Greenville, or the possession of them given to him until M'Clure would sell them ? If you do, the plaintiff is entitled to your verdict for the value of the oxen. If you do not believe that the sale was a fair and an honest one, or if you believe that the sale was fair and honest, and the price paid, but that there was no delivery of the oxen, then your verdict will be for the defendant."

Errors assigned :

1. In charging the jury that, if the purchaser of this property afterwards loaned it to the person from whom he bought it, or gave him possession of it for a particular purpose, this transaction is not a fraud *per se*, more than if he had loaned or given possession to another person.

2. In charging under the facts in this case, that if the oxen were sold and delivered to M'Clure, and then lent to Pettigrew to haul coal to Greenville, or given to him to keep till M'Clure would sell them, the plaintiff was entitled to recover.

3. The narr. is defective in not laying any damages.

*Pearson*, for plaintiff in error. The actual fraud was very properly left to the jury; but we say it was a fraud in law. There was no delivery; the cattle were left in the possession of Pettigrew to do as he pleased. While there they were liable to execution. M'Clure never took them from the shop where they were left to be shod; all he did was to take one of them by the horn, turn it round, and hitch it again. *Babb* v. *Clemson* (10 *Serg. & Rawle* 419) is decisive of the law; here, as there, the possession remained precisely as before — the delivery was merely colourable.

[Young v. M'Clure.]

In *Hamilton* v. *Russell* (1 *Cranch* 309), it was decided that an abso-lute bill of sale is fraudulent if the possession does not accompany it. Here it was agreed at the sale that the property should be re-delivered to Pettigrew. 2 *P. R.* 481 only decides that on a judicial sale, the person buying may safely leave the property with the former owner. He also cited 1 *Esp. Rep.* 205; 1 *Camp-bell* 332; 1 *Gall.* 419; 9 *Johns.* 337; 2 *Hen. & Munf.* 289; 4 *Rawle* 260; 14 *Serg. & Rawle* 214, where the subject is reviewed. On the third error, he cited 1 *Chitt. Prac.* 397.

*Agnew, contra.* It was not till an hour after delivery, that the agreement was made that M'Clure should have the oxen to haul coal for the keeping. But the court tell the jury that if there has been delivery, and the transaction was *bona fide*, the purchaser may afterwards lend the thing to the former owner. In *Babb* v. *Clemson* there was no delivery; no step was taken towards re-moval; only a person was put in possession, and the owner resided there as before. In *Hamilton* v. *Russell*, the continuing in possession was the badge of fraud. This court will not decide that after delivery of possession on a *bona fide* sale, a purchaser can, under no circumstances, give back the property to the former owner. As to the blank in the narr., he cited *Chaffee* v. *Sangston* (10 *Watts* 265).

*Pearson*, in reply, cited 5 *Whart.* 545; 6 *Whart.* 53; 15 *Wend.* 244; and insisted that the delivery here was merely formal.

The opinion of the Court was delivered by

SERGEANT, J.—The oxen being found in the possession of Petti-grew, when they were levied on and sold under the execution of the Guthries, the title to them was *primâ facie* in the officer's vendee. It was therefore incumbent on M'Clure, who claims by a previous transfer to him from Pettigrew, against the sale by exe-cution, to show that the possession of the oxen accompanied and followed the transfer to him. It is not sufficient that the assignor gives to the assignee a delivery which may be symbolical or con-structive, or as here a temporary delivery, and then takes the articles back into his own possession, and keeps and uses them just as he did before. This is not the possession in the assignee which the law requires. There must be not only a delivery of the thing to him at the time of transfer, but a continuing pos-session, and that must be shown by the claimant. There is no evidence whatever that M'Clure ever removed the oxen from the place of the alleged delivery, ever had them in his own stable or field, or anybody else's for him, or ever used or employed them as his own. Not only is there no evidence that the possession of M'Clure followed the transfer, but rather the contrary; for, accord-ing to Pettigrew's own statement, with the exception of an inter-

val of one hour, the possession continued in Pettigrew; and even during that hour no exclusive possession is shown in M'Clure, the assignee; so that the possession of the assignor does not appear to have been altered. It is alleged to have been an absolute transfer to M'Clure, and no sufficient reason is assigned why he, after an hour's interval, permitted Pettigrew to get the oxen shod, and take them back into his own custody and employment. All that is proved might well exist, and yet the whole be a mere contrivance between M'Clure and Pettigrew, that Pettigrew should keep the oxen, but M'Clure should have a security or lien upon them for the price agreed on. If such a transaction is allowed, it would be very easy to concoct schemes for defeating judgment creditors, and yet allow the assignor to keep possession. The question, however, is not, in these cases, whether, under all the circumstances, the transfer is in good faith, and without design to cover the property, or to delay or hinder creditors. It is an inflexible rule which makes it a fraud *per se*, if the possession does not follow as well as accompany the transfer. *Clow* v. *Woods* (5 *Serg. & Rawle* 275; *Babb* v. *Clemson* (10 *Serg. & Rawle* 419); *Carpenter* v. *Mayer* (5 *Watts* 485); *Hamilton* v. *Russell* (1 *Cranch* 309).

If it was a fraud in law, without regard to the intent of the parties, it became a question for the court and not for the jury to decide. *Dornick* v. *Reichenback* (10 *Serg. & Rawle* 84); *Carpenter* v. *Mayer* (5 *Watts* 485). There being no evidence to show that the possession accompanied and followed the transfer, the plaintiff failed in making out his case, and the court on the evidence ought so to have instructed the jury. They erred in instructing the jury, that if they believed it was a fair, honest, *bonâ fide* sale, and that the oxen were delivered to M'Clure, and that they were loaned to haul coal to Greenville, or the possession given to Pettigrew until M'Clure should sell them, the plaintiff was entitled to a verdict.

The objection to the blank in the declaration comes too late after verdict.

Judgment reversed, and *venire facias de novo* awarded.