# M'Bride *against* M'Clelland.

A symbolical, constructive or temporary delivery of personal property is not
sufficient to change the ownership as to creditors; there must be an actual de-
livery at the time of the transfer, and a continuing possession: otherwise the
sale, although *bond fide,* as between the parties themselves, is fraudulent in law.

ERROR to the District Court of *Allegheny* county.
This was an action of trover and conversion, by John M'Clel-
land against David M'Bride.    The facts of this case were depend-
ent entirely upon parol testimony, which was voluminous and
contradictory.    The substance of them was, that Andrew S. Joy,
being the tenant of the plaintiff, sold to him certain articles of
personal property, consisting of a horse, two cows, some sheep,
hogs, &c., in payment of his rent.    The property was removed to
a neighbouring house, by the plaintiff, for safe-keeping; and in the
course of the same day, and a few days following, all the property
got back again to the premises occupied by Andrew S. Joy, and
there they were levied and sold by David M'Bride upon an execu-
tion against Joy.    This action was then brought to recover their
value.
The court below instructed the jury, that if the sale by Joy to
M'Clelland was honest, and in pursuance of it the possession was
changed and given to M'Clelland, and Joy afterwards obtained
the possession again without the act or consent of M'Clelland, he
was entitled to recover in this suit.

[M'Bride v. M'Clelland.]

*M'Graw*, for plaintiff in error, argued that the court should have instructed the jury that the facts in proof did not establish a delivery at all; that it was merely colourable and strong evidence of fraud.   10 *Serg. & Rawle* 424; 2 *Watts & Serg.* 150; 2 *Whart.* 307.

*M'Candless*, contra, argued that the whole case was matter of fact, and depended upon the weight the jury would give to the testimony; and that there was no legal fraud.   1 *Yeates* 529; 3 *Serg. & Rawle* 20; 10 *Serg. & Rawle* 84.

The opinion of the Court was delivered by

ROGERS, J.—The plaintiff claims title under a contract with Joy, his tenant, and the defendant under an execution against the same person, as whose property the goods were seized and sold, they being, at the time, in the actual possession of the former owner. To enable the plaintiff to recover, two things are necessary.   He must prove a purchase of the articles from Joy, the former owner, and an actual *bonâ fide* delivery to the vendee; for, in order to make a transfer of personal property available against creditors or a subsequent assignee, it must be accompanied by a change of possession at the time, or within a reasonable time thereafter. The change of possession must be *bonâ fide,* not colourable—clear, unequivocal and exclusive.   The rule is intended to prevent fraud, and avoid the danger to creditors by giving a man a false and delusive credit.   After stating very clearly the reason of the rule, Mr Justice KENNEDY, in *Streeper* v. *Eckart*, (2 *Whart.* 307), holds this language : " Seeing, then, this is the object of the law in requiring that a change of the possession shall accompany a transfer of the right of property, how is it possible that a change merely for a single night or day can answer the purpose, and advertise the public of the change of ownership in the property ?"   And in *Young* v. *M'Clure*, (2 *Watts & Serg.* 147), a case very like, in all its circumstances, to the present, it is held that to constitute a valid assignment of personal property against an execution, there must be a delivery, accompanied and followed by a continuing possession in the assignee.   And when the possession does not follow, as well as accompany a transfer, it is a fraud in law, without regard to the intent of the parties, and becomes a question of law.   It is not sufficient that the assignor give to the assignee a delivery which may be symbolical or constructive, or a temporary delivery, and then take the articles back into his own possession and keep and use them just as before.   This is not the possession in the assignee which the law requires.   There must be not only a delivery of the thing to him at the time of the transfer, but a continuing possession, and that must be shown by the claimant.

These principles have a direct application to the case in hand. It appears from the evidence that Joy was the tenant of the plain-

tiff, M'Clelland, and as a security, or in payment of a rent not then due, on a lease which did not commence until the 1st April thereafter, entered into a written agreement, dated 20th February 1843, which purports to be a sale of the property. But notwithstanding the writing, when this transaction is viewed in all its aspects, we are not without suspicion, disguise it as you may, that it was intended as nothing more than a security for the rent of the ensuing year. It was so understood by several of the witnesses, and it requires strong faith to believe otherwise. But granting it to be a sale, was the possession so changed as to vest the property in the vendee in the manner indicated by the cases cited, so as to exempt it from the execution of creditors. If it were, it is obvious that the creditors have but little security, and the rule itself will be wholly inoperative. Here the articles were at Byers's, the place of delivery, some forty minutes or more. The horses were not even unhitched, nor were the pigs even taken out of the wagon. Having remained the time mentioned, they were again returned to the possession of the former owner, who continued to use them as before the sale. It seems, that the cattle found their way back the same evening, driven, as some of the witnesses say, by Joy, the tenant. M'Clelland, it is true, went through the ridiculous farce of marking the sheep, (for what purpose it is not difficult to conjecture), went into the house to take his supper, and then all the property, notwithstanding the pretended sale and delivery, is permitted by Byers to go again into the possession of the former owner, where they remained until they were seized in execution. The sheep, although such pains were taken in marking them, were also returned, as they say, for safe-keeping, to Joy, under the pretext that Byers had no food for them. It must strike every person, as singular, that this was not thought of before the removal of the articles to his house; and it is equally strange, that food for a day or two could not be procured for seven sheep, particularly as there was a public-house about 40 rods from Byers's, the depositary. It must also be remarked that the articles, viz. sheep, cows, horse, wagon and harness and pigs were absolutely necessary to carry on the farm; hence we may reasonably infer that M'Clelland was not anxious to see them when they passed by the door or room where he was comfortably seated. This, also, will account for the fact that we hear of no objection, on the part of M'Clelland, to the permission given by Byers to take back the articles to Joy, the tenant. It is impossible to account for the conduct of the parties, and especially Byers and M'Clelland, upon any rational principles, except on the natural supposition that it was perfectly understood by all of them to be nothing more than a security for a year's rent, commencing the 1st of April after the contract, and that the property was to be used by Joy as before. It is not said that M'Clelland has been guilty of a moral fraud. His motives may have been, and probably were, twofold; to secure

[M'Bride v. M'Clelland.]

to himself a tenant for the ensuing year, and as an act of humanity towards the wife of Joy, who could not well be removed from the premises.   But although he may not be guilty of any moral wrong, yet we are of the opinion that it is a clear case of legal fraud, and that the court ought so to instruct the jury as a matter of law.

Judgment reversed, and a *venire de novo* awarded.